In re **HAWAII GENERAL CORPORATION**, Debtor.

In re **ROYAL HAWAIIAN PARTNERS**, Debtor.

In re **FIRST HAWAIIAN DEVELOPMENT PARTNERS**, Debtor.

In re **FIRST HAWAIIAN DEVELOPMENT CORPORATION**, Debtor.

Bankruptcy Nos. 82–00619 to 82–00622.

United States Bankruptcy Court, D. Hawaii.

Oct. 21, 1983.

Mary Durant, Terry Day, Honolulu, Hawaii, for debtor.

William Dodd, Honolulu, Hawaii, for McEachern Corp.

Allison H. Lynde, Honolulu, Hawaii, for firm of Walter Chuck.

Gaylord Virden, Honolulu, Hawaii, pro se.

Erik Zen, Raymond Okuma, Honolulu, Hawaii, for creditor.

## ORDER

JON J. CHINEN, Bankruptcy Judge.

On May 24, 1983, the law firm of Brown & Durant, hereafter "Applicant", filed its Application For Interim Compensation. Hearings were held on July 27, 1983, and August 23, 1983, at which were present Mary Durant, Esq., and Terry Day, Esq., representing Applicant, William Dodd, Esq., representing McEachern Corporation, Gaylord Virden, Esq., representing himself, and Allison H. Lynde, Esq., representing Walter Chuck, Attorney.

At the hearing held on July 27, 1983, questions were raised concerning the timesheets submitted by Applicant. As a result, on August 3, 1983, Applicant filed a Revised Legal Fees Schedule, wherein it was for the first time revealed that Applicant had received $16,100.15 from the "General Estate."

At the continued hearing held on August 23, 1983, the Court inquired about the amount Applicant had received and informed Applicant of the necessity of filing a Disclosure Statement.

To date, no disclosure statement has been filed by Applicant.

Rule 215(a) of the Bankruptcy Rules reads in part as follows:

(a) Conditions of Employment of Attorneys and Accountants. No attorney or accountant for the trustee or receiver shall be employed except upon order of the court. The order shall be made only upon application of the trustee or receiver, stating the specific facts showing the necessity for such employment, the name of the attorney or accountant, the reasons for his selection, the professional services he is to render, and to the best of the applicant's knowledge *all of the attorney's or accountant's connections with the bankrupt, the creditors, or any other party in interest, and their respective attorneys and accountants.* (Emphasis added)

Pertinent provisions of Rule 219(b) of the Bankruptcy Rules reads as follows:

(b) Disclosure of Compensation Paid or Promised to Attorney for Bankrupt. Every attorney for a bankrupt, whether or not he applies for compensation, shall file with the court on or before the first date set for the first meeting of creditors, or at such other time as the court may direct, a statement setting forth the compensation paid or promised him for the services rendered or to be rendered in connection with the case, the source of the compensation so paid or promised, and whether the attorney has shared or agreed to share such compensation with any other person . . . .

In denying fees to Debtor's attorneys who had failed to properly disclose the retainer received from Debtor and the payment received from Debtor following the filing of the petition in bankruptcy, the District Court in *Arlan's Dept. Stores, Inc.,* 462 F.Supp. 1255 (1978) stated:

Applicant neglected to disclose receipt of the retainer in the Chapter XI petition or in its affidavit annexed thereto. General Order in Bankruptcy 44, in effect at the time, requires that all attorneys' connections with the debtor be disclosed and Bankruptcy *Rule 215* which superseded General Order 44 continues this requirement. Chapter XI, *Rule 11–22* makes applicable *Rule 215* to *Chapter XI cases* . . . .

I find nothing untowards per se in the fee, its size or the manner of its payment. Lawyers are not held to a standard of

self-sacrifice. They are entitled to ensure payment for use of their professional skills. The payment, however, should have been disclosed to the court at the onset of the Chapter XI proceedings. It was disclosed some six months later in Arlan's consolidated schedules and statement of affairs filed on November 28, 1973. Ballon contends it has no obligation to advise the Chapter XI court at the outset concerning the retainer it received. That argument, however, flies in the teeth of the plain language of General Order 44.

During July, 1973, Itzler received an additional $5,000 evidenced by another handwritten receipt. This payment was not disclosed in the November 28, 1973 consolidated schedules and statement of affairs. Nor was any reference made to it in the fee application filed in February, 1975. It surfaced at the November 18, 1977 hearing on fee applications and is included in the amended fee petition. The failure to disclose the payment is said to have been inadvertent, but that explanation misses the point. In July, 1973, Arlan's was in Chapter XI proceedings before Bankruptcy Judge Babitt. Whatever Ballon's doubt about its being required to reveal to the court at the commencement of Chapter XI proceedings that Arlan's had paid it a retainer, it cannot and, indeed, does not attempt to argue that it could receive any funds from the debtor in Chapter XI without court authorization. It seeks to obfuscate the real issue with the irrelevant. Inadvertence is certainly not apt description of what amounted to a direct violation of the duties and responsibilities of a Chapter XI general counsel. Only some 4 years after that unauthorized payment was made was it finally disclosed....

The $5,000 payment without court authority was simply improper. At the time the proceedings were in Chapter XI, and it was for the court to determine what fees, if any, should be paid. Finally, however one views the $125,000 retainer, it should have been disclosed at the time approval of the appointment was sought....

(6) While, at least for purposes of this case, I will accept the reading of General Order 44 subsequent to the 1933 amendment, see *In re Itemlab Inc.*, 257 F.Supp. 764 (E.D.N.Y.1966), that the deficiencies indicated do not necessarily require or compel a denial of compensation, it seems to me that the totality of Ballon's failure of full disclosure leaves no other recourse. The court was entitled and indeed needed to have all the facts about Ballon's relationship to the debtor, the retainer it obtained, and its agreement with Finley before it could have been able to make a fair appraisal of Ballon's fitness for the appointment. That it may well have named Ballon general counsel even with a full disclosure is beside the point. Moreover, the taking of $5,000 to which it had no right except by court order and "inadvertently" failing to disclose it is a patent violation of the law and of Ballon's obligations as an attorney. The appointment, accordingly, is tainted. Under the circumstances, an order awarding no fee to Ballon and requiring a return to the estate of the $129,993.98 heretofore received with interest is the appropriate prophylactic measure to be employed. There are additional deficiencies discussed by the Commission, but in view of the above holding and its basis, they appear irrelevant....

In affirming the District Court, the Circuit Court in *Matter of Arlan's Dept. Stores, Inc.*, 615 F.2d 925 (1979) stated:

The law firm is not expected to disregard its own welfare, but neither is it expected to ignore its obligation to advise the court so that the court might make the determination of propriety based on the circumstances in the case. The arguments made to support the receipt of the retainer should have been raised at the outset and not six months after the event....

(7) Ballon maintains that it had fully complied with General Order 44 since it alerted the court to the fact that Arlan's had retained Ballon, and retention pre-

sumes the payment of a fee. The argument that the retainer is no more than an element of the disclosed attorney-client relationship into which the court may inquire if it so desires before approving the appointment is meritless. This position reflects the persistent Ballon attitude of "That's for me to know and for you to find out," which we find totally incompatible with its fiduciary status as an officer of the court. Ballon protests that it has found no case in which General Order 44 has been construed to require disclosure of a retainer by counsel for the debtor-in-possession. Neither have we. Nor do we hold that such disclosure is always mandated by General Order 44. We do hold that, under the circumstances, disclosure was mandated here. In *Meinhard v. Salmon,* supra, 249 N.Y. [458] at 466, 164 N.E. [545] at 547, Chief Judge Cardozo commented: "Little profit will come from a dissection of the precedents. None precisely is cited in the briefs of counsel. What is similar in many, or so its seems to us, is the animating principle." The animating principle here is the fiduciary obligation owed by counsel for the debtor to the bankruptcy court. Those obligations are not limited in any way by the rules of bankruptcy where a breach of fiduciary obligation is found.

(9) Ballon argues that even if the acceptance of the $5,000 fee is viewed as improper, and on the record before us that conclusion is inescapable, the sanction imposed to the extent that it depends on this retainer is extremely disproportionate. We note that while Judge Carter characterized the taking of the $5,000 as a "patent violation of the law and of Ballon's obligations as an attorney", he ultimately based his denial of the whole fee and his order that the money already received be returned with interest on "the totality of Ballon's failure of full disclosure." 462 F.Supp. at 1265. . . .

Both firms complain that their professional honor has been impugned by the court below. Lawyers, however, must be in the first instance the guardians of their own reputations. Any blots on their escutcheons are self-inflicted, not court-created. In our view, Judge Carter would have been remiss had he failed to find otherwise, and the remedy he imposed is appropriate. . . .

■ In the instant case, Applicant acknowledges receipt of $16,100.15 in fees from the "General Estate." Even after this Court had informed Applicant of the need for a disclosure statement, Applicant has not filed such a statement. The Court does not know what is meant by "General Estate" and has not been informed who made the payment to Applicant or whether the payment was made pre-petition or post-petition.

The Court finds that Applicant has failed to properly disclose the payment received as part of its fees. Such conduct on the part of Applicant is a violation of Rules 215 and 219 of the Bankruptcy Rules and as stated in *Matter of Arlan's Dept. Store, Inc.,* supra, is a violation of "Applicant's obligation as an attorney." The Court thus denies Applicant's Application For Interim Compensation and ORDERS Applicant to promptly file a proper disclosure statement regarding the "$16,100.15 received from the General Estate", after which the Court will determine appropriate further action concerning said $16,100.15.

The Court now turns to the question of the distribution of the proceeds of the settlement. In addition to the claim for attorneys' fees by the attorneys for debtors, claims for part of the proceeds have been filed by Gaylord A. Virden, the law firm of Walter G. Chuck, and Stanley Roehrig, all of whom were formerly attorneys for debtors, and by McEachern Corporation, claiming a secured interest through its predecessor General Construction. In addition, Applicant claims herein an attorney's lien for its pre-petition service to debtor.

### A. The Claims of Attorneys Chuck and Virden

Gaylord A. Virden, formerly an attorney for debtors in the litigation of which the settlement proceeds are the subject of this

controversy, filed herein the following documentation:

1. Proof of Claim # 1 on December 28, 1982, wherein he claimed a secured claim of $41,046.10 pursuant to an attorney's charging lien.

2. On July 20, 1983, a Notice of (or Motion for Order Enforcing) Attorney's Charging Lien, and Memorandum, including as exhibits copies of the following documents:

 a. A Promissory Note between debtors and General Construction Company promising to pay General Construction $320,000.00 from the proceeds of the subject litigation, such obligation subrogated to the claims of Virden and Chuck for attorneys' fees for the litigation.

 b. An Agreement dated September 17, 1979, between debtors and Walter G. Chuck wherein debtor specifically assigns proceeds from the subject litigation to cover Chuck's fees.

 c. An Agreement dated June 4, 1981, between debtors and Virden and Chuck wherein debtors specifically assign proceeds from the subject litigation to cover the fees of Virden and Chuck.

3. On August 15, 1983, a Third Notice of Attorney's Charging Lien, wherein the amount claimed is adjusted to $43,550.02.

The law firm of Walter G. Chuck has filed herein the following documentation regarding its claim:

1. Proof of Claim # 3, filed January 12, 1983, stating an unsecured priority claim of $28,464.43, as an attorney's charging lien on the settlement proceeds.

2. Proof of Claim # 6, filed herein on July 11, 1983.

3. Proof of Claim # 7, filed herein on July 14, 1983.

4. On July 25, 1983, a Notice of (or Motion for Order Enforcing) Attorney's Charging Lien.

5. On August 15, 1983, a Supplemental Affidavit and Exhibit Supporting Notice of Attorney's Charging Lien, wherein the above claim is reduced to $27,676.63, pursuant to an adjustment of amounts claimed for overhead charges during the period when Virden was renting offices and services from the Chuck firm.

6. On August 18, 1983, a Supplemental Exhibit "E" to Notice of Attorney's Charging Lien.

■ Pursuant to the above documentation and the memorandum supporting the attorney's charging lien, the Court finds the liens to have arisen from written agreements which specifically assigned to Virden and Chuck that portion of the settlement proceeds sufficient to cover their fees computed in accordance with the agreements dated September 17, 1979 and June 4, 1981. Such charging liens have been recognized by the Courts of the State of Hawaii. *Carroll v. Miyashiro,* 50 Haw. 413, 414, 441 P.2d 638 (1969); *Hawaiian Trust Co. v. Hogan,* 1 Haw.App. 560, 623 P.2d 450 (1981).

The present attorney for debtor herein challenged the amount of fees claimed by Virden and Chuck pursuant to the charging liens stating that this Court must redetermine the fees to be allowed on a quantum meruit basis. The cases cited in support of this challenge do not support that proposition. *Rosenberg v. Levin,* 409 S.2d 1016 (1982), involved determination of appropriate fees of attorneys who assumed work on a contingency basis but whose client subsequently discharged them and settled out of court. The Florida Supreme Court there determined that the attorneys should be paid on a quantum meruit basis, limited to the maximum fee set in their contingency contract. *In re Normal Towel Service,* 18 B.R. 949 (Bkrtcy.N.D.Ill., 1982), again involves the determination of fees for a firm retained on a contingency basis but discharged before final resolution of the suit, the Court holding that fees would be paid on the basis of a reasonable per hour charge for services rendered. In each of these cases, lacking a specific written agreement regarding the fees, the Court was called upon to determine an appropriate and equitable procedure for determining the fees. In the instant case, written agreements form the basis of the charging liens which

Virden and Chuck hold against the proceeds. The agreements state the specific fees to be charged and as requested by Chuck and Virden these fees constitute the lien.

The charging liens of Chuck and Virden thus being properly based on written agreements and having been timely filed herein, are valid secured liens on the proceeds.

### B. *The Claim of McEachern Corporation*

McEachern Corporation, the successor to General Construction Company, has filed herein a claim to a secured interest in the proceeds of this settlement by way of a January 1981 settlement of various claims against debtors in exchange for a Promissory Note for $320,000.00 of the proceeds of this settlement to General Construction. The Note specifically subordinates General Construction's interest to the claims of Chuck and Virden and then allows for 50% of the first $200,000.00 to be paid to General Construction. The settlement and note, duly recorded on February 13, 1981, were filed herein as exhibits to documents submitted by the attorney for McEachern Corporation on August 15, 1983 and August 16, 1983.

No challenge has been presented in the instant proceedings to the validity of McEachern's claim and the Court hereby recognizes the claim of McEachern to 50% of the instant proceeds after the claims of Chuck and Virden have been satisfied.

### C. *Claim of Stanley A. Roehrig*

■ The claim of Stanley Roehrig, filed herein on April 20, 1983 as a Proof of Claim # 4 and supported by billings submitted on behalf of Roehrig by the attorneys for debtors on August 15, 1983 indicate that Mr. Roehrig performed services for debtors in 1980 on matters allegedly related to the subject litigation and that sums remain due to Mr. Roehrig for these services. Documentation has not been presented which would support a determination that Mr. Roehrig holds a charging lien to be satisfied out of the proceeds of the instant litigation. At best, the documentation before the court supports Mr. Roehrig's claim as an unsecured pre-petition claim for services, and lacking further support, Mr. Roehrig's claim is to be treated as such.

### D. *Claim of Attorneys for Debtor*

In their Reply Memorandum to Memoranda in Opposition to Application for Interim Compensation for Services Rendered and for Reimbursement for Cost Incurred as Attorney for Debtors, filed on August 22, 1983, attorneys for debtor claim that their services to debtors performed prior to the institution of bankruptcy proceedings in connection with the litigation from which the proceeds in question arose, having been expended pursuing the litigation in question, constitute a charging lien on the proceeds.

As in the case of the Roehrig claim, the claim for a charging lien on behalf of attorneys for debtor is not based upon a specific fee agreement with the clients but rather is asserted as an alternative to Applicant's claim for fees as an administrative expense from debtor's estate. The Court having disallowed Applicant's request for fees as an administrative expense on grounds herein discussed, this claim, if timely filed, would constitute at most an unsecured claim against debtor's estate.

Pursuant to the foregoing discussion, the Court HEREBY ORDERS ADJUDGES AND DECREES that the $130,000.00 proceeds of the settlement of the litigation known as *Royal Waikoloan Partners, et al., v. Boise Cascade Corporation et al.,* Civil No. 60133, be distributed as follows:

| | |
|---|---|
| Walter Chuck | $27,676.63 |
| Gaylord Virden | 43,550.02 |
| Subtotal | 58,773.35 |
| McEachern Corporation (50%) | 29,386.68 |

The remaining sum of $29,386.67 is to be held for subsequent distribution pursuant to further orders of this Court.