**In re AUTOMEND, INC., Debtor.**

**Bankruptcy No. 87–06617.**

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

April 8, 1988.

174

Robert L. Coley, U.S. Trustee, Donald F. Walton, Asst. U.S. Trustee, Elizabeth A. Stuhldreher, Staff Atty., Atlanta, Ga., for petitioner.

William L. Norton and George M. Geeslin, Norton, Pennington, Goetz, Cronkright & Prior, Atlanta, Ga., for debtor.

## ORDER

MARGARET H. MURPHY,
Bankruptcy Judge.

This matter is before the Court on the Trustee's Motion for Reconsideration of Or-

der Granting Application to Employ Attorneys. Hearing on the Trustee's motion was held December 16, 1987. Briefs have been filed by Debtor and U.S. Trustee.

## STATEMENT OF FACTS

This Chapter 11 case commenced August 28, 1987. On September 8, 1987, Debtor filed its Application to Employ Attorneys (hereafter referred to as the "Employment Application"). The Employment Application contained no disclosure of the terms of the agreement between Debtor and its proposed attorneys concerning compensation other than the following boilerplate recital:

Norton, Pennington has been employed under general retainer and has agreed to accept as compensation for its services and reimbursement of costs herein, (sic) such compensation and reimbursement as may be awarded by the Bankruptcy Court after notice and hearing, or pursuant to such other interim procedures as may be approved and authorized by the Bankruptcy Court.

The Order by the Honorable Judge W. Homer Drake approving Debtor's Employment Application was entered on September 16, 1987, and served on Debtor, Debtor's attorneys and the U.S. Trustee.[1] The U.S. Trustee was not served with the Employment Application until October 13, 1987.[2] The U.S. Trustee filed its motion for reconsideration on October 15, 1987.

The Rule 2016(b) Disclosure of Compensation form (hereafter referred to as the "2016 Statement") filed by Debtor on September 25, 1987, disclosed Debtor had paid $1,000 to its attorneys with $50,000 to be paid "from earnings and/or note secured by accounts." The Debtor's Statement of Affairs and Schedules of Assets and Liabilities and related pleadings (hereinafter referred to as the "Schedules"), also filed on September 25, 1987, listed Debtor's attor-

neys as secured creditors but identified neither the property subject to the security interest nor the fair market value of the property.

At the December 16, 1987 hearing, it was adduced that further disclosure of the terms of the agreement of compensation between Debtor and its attorneys occurred October 2, 1987, at the 11 U.S.C. § 341 First Meeting of Creditors (hereafter referred to as the "§ 341 Meeting"), to wit: the Debtor disclosed that the agreement with its attorneys provided for payment of $5,000.00 per month. In fact, the Debtor's first monthly report disclosed a $5,000.00 post-petition payment by Debtor to its attorneys in October, 1987, apparently in accord with its fee agreement, but made without prior court approval.

Debtor is a body paint and repair company. It claims to be the largest such business in the Atlanta area with the most up-to-date equipment. As a result, Debtor has heavy overhead expenses. The 3.081 acre tract of real property on which Debtor's business is located may have a value in the range of $800,000.00 to $975,000.00[3] and is subject to a first priority deed to secure debt outstanding of approximately $500,000.00. At the time of filing, Debtor's accounts receivable totalled slightly less than $31,000.00. To date, no creditor appears to claim a security interest in Debtor's accounts receivable except Debtor's attorneys.

At the December 16 hearing and with briefs filed after that hearing, it was disclosed that the note referenced in the 2016 Statement was, in fact, a $50,000.00 demand note executed on August 27, 1987, one day before the petition was filed. The note was secured by the Debtor's real property and a perfected security interest in Debtor's accounts receivable. In order to further protect Debtor's attorney's fees, by

1. This case was soon thereafter reassigned after two additional judges were invested in this district.

2. Because the U.S. Trustee's office first began operations in the Northern District of Georgia in August, 1987, Debtor's attorneys were unaware that applications for employment of professionals were to be served on the U.S. Trustee. Debtor's attorneys corrected the mistake as soon as they became aware of the requirement.

3. The testimony at the December 16 hearing valued the property at $800,000.00. Debtor's Schedules value the property at $975,000.00.

further perfecting the lien thereon, Debtor's attorneys required Debtor to segregate its accounts receivable. Debtor did so. Following the December 16 hearing, Debtor's attorneys filed an application for interim compensation requesting *nunc pro tunc* approval of the $5,000.00 payment already made to its attorneys, hearing on which is set for April 19, 1988.

## CONCLUSIONS OF LAW

The issue raised by the U.S. Trustee is whether an attorney or law firm with a security interest in property of the estate is disinterested within the meaning of 11 U.S.C. § 327(a) and 11 U.S.C. § 101(13). Section 327(a) states:

> ... [T]he Trustee [or debtor in possession], with the Court's approval, may employ one or more attorneys ... [who] do not hold or represent an interest adverse to the estate, and [who] are disinterested persons....

Section 101(13) states:

> "disinterested person" means person who:
> (A) is not a creditor ... [and]
> (E) does not have an interest materially adverse to the interests of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor ..., or for any other reason[.]

Therefore, by virtue of the security interest obtained by the attorneys prepetition, the attorneys are strictly speaking, creditors of the estate. Section 101(13)(A) states unconditionally that a creditor cannot be a disinterested person. As discussed below, however, many courts recognize that this seemingly unequivocal disqualification of creditors cannot be rigidly enforced. The more important consideration is the *nature* of the interest taken with respect to § 101(13)(E).

■■■■ This Court is persuaded by the reasoning of the First Circuit Court of Appeals in *In re Martin*, 817 F.2d 175 (1st Cir.1987). This Court agrees that use of a *per se* rule excluding attorneys who are creditors of the debtor would be an over-broad interpretation of § 327(a) and § 101(13). For example, an attorney becomes a creditor of the estate as soon as he expends compensable bankruptcy case-related time but he does not become a "creditor" within the meaning of § 101(13)(A). On the other hand, an attorney who is a prepetition creditor with a security interest in the debtor's assets for payment of fees for prepetition non-bankruptcy work would be a creditor under § 101(13) and would be disqualified under § 327. *In re Pierce*, 809 F.2d 1356 (8th Cir.1987). The facts of the instant case fall between these two circumstances. Although an arrangement in which an attorney takes a security interest in assets of the estate may not violate § 327 *per se*, it should be examined closely by the Court after appropriate disclosure.

In the *Martin* case, the First Circuit Court sets forth several factors to be considered in determining the propriety of an attorney obtaining a security interest in the debtor's assets as a guarantee of payment of fees. The primary considerations in the instant case are:

> (a) whether and to what extent the property in which the attorneys obtain a security interest is used for any business purpose associated with the debtor's business;
> (b) "the nature and extent of the conflict" ... "along with the likelihood that a potential conflict might turn into an actual one";
> (c) the complexity and predictable magnitude of the services required by the case in its initial stages balanced against the amount of the fee secured and the type of security interest demanded;
> (d) *notice*, about which the *Martin* court states:
>> What counts is that the matter not be left either to hindsight or the unfettered desires of the debtor and his attorney, but that the bankruptcy judge be given an immediate opportunity to make an intelligent appraisal of the situation and to apply his experience, common sense, and knowledge of the particular proceeding to the request.

817 F.2d at 182. The facts in *Martin* present a situation similar to the one at bar. The primary difference, however, is that, unlike the case at bar, in *Martin* the fee arrangement and the security interest were *fully disclosed* to the Court at the outset of the case.[4]

Debtor alleges that, at the time of filing the bankruptcy petition, Debtor suffered a cash shortage but was blessed with significant unencumbered assets, thus making the granting of a security interest in property of the estate almost a necessity in order to insure employment of experienced counsel. The Court recognizes that a debtor's financial condition may require a retainer and that the debtor's cash shortage may mandate the granting of some sort of security interest, as a substitute for a retainer or as a supplement to an inadequate retainer, as discussed more fully below. In some cases the volume of the debtor's cash flow and whether it is subject to security interests in relation to the total assets and method of debtor's operation *may* justify, in lieu of an adequate retainer, a security interest in the accounts receivable for debtor's attorney. Assuming that accounts are a major source of working capital necessary to fund a plan or to obtain financing in a case of the size and simplicity of the instant case, the security interest in accounts in this case took a prime bite out of one of the "most promising assets of the estate" and is an indication of some overreaching by its attorneys. *Martin* at 181.

Taking a security interest in the accounts also increases the likelihood of a potential conflict turning into an actual one, especially in view of the Debtor's cash shortage. A default by Debtor in the monthly payments apparently required by its attorneys could, in the minds of creditors, raise the possibility of Debtor's attorneys raiding Debtor's accounts to the detriment of Debtor's operations and, consequently, Debtor's creditors. In this debtor's operations, as with most debtors, accounts are both intimately and integrally connected with the business.

Furthermore, the note Debtor executed was a demand note, raising the spectre, from a creditor's perspective, of Debtor's attorneys' right to call the note due and payable at any time. Circumstances may exist, in an appropriate case, for taking a demand note, secured by some of a debtor's assets. In the instant case, however, Debtor's attorneys offered no explanation at the hearing for the necessity of a demand note. Debtor's brief, filed following the hearing, however, explained that a demand note allowed for flexibility in payments, unlike an installment note. Given the prior lack of disclosure to the Court and creditors of the details of the apparent agreement to be paid as much as $5,000 a month, if not more, the explanation falls short. Who decided $5,000 was an appropriate amount for the first month's payment? The debtor? The debtor's attorney? What was the rationale for the failure to obtain this Court's approval prior to making any payment?

The amount of a retainer must be balanced against the demands and complexities the case is likely to present in the initial stages. There is little, if any, evidence thus far that the instant case presents such a magnitude of demands and complexities as to justify a retainer of $50,000.00.

█ The primary reason for attorneys to require payment of substantial retainer fees in Chapter 11 cases is that, in many normal cases, a substantial amount of work must be done in the first 30–90 days after the petition is filed in order for the debtor, with the guidance of its attorneys, to obtain conceptual and actual control of the debtor's business and to begin solving the problems causing its financial distress. The foundation for success or failure of a reorganization is often set in that initial phase of the case. During that phase, the preparation and filing of an application to the Bankruptcy Court for interim compensation easily diverts the attention of the

---

4. See discussion, *infra,* regarding the failure of Debtor's attorneys to fully disclose the nature and extent of their compensation arrangement and the source thereof. 11 U.S.C. § 329 and Bankruptcy Rule 2016.

debtor's attorney from righting the listing ship. In an average case, therefore, a retainer should not be an amount sufficient to discharge all attorney fees for the entire case, but should provide fees only for the early stages of the case.[5]

■ In cases such as the instant case, where the debtor suffers a cash shortage, the taking of a security interest should be in lieu of a cash retainer, or to supplement an inadequate retainer. It should not be used as a vehicle to obtain fixed or variable monthly payments on a note to circumvent court approval of payment of interim fees. In a case where assurances of timely review of interim fee applications is critical, methods are available[6] to provide such review without dispensing with it altogether, as has been attempted in the instant case. If Debtor's attorneys herein estimated their services in the initial phase of this case to approximate $5,000.00 per month, then 10 months' secured payments are excessive and the $50,000 note is excessive in amount.

All of the above concerns could have been explained and dealt with appropriately early in the case if adequate disclosure had been made with the 2016 statement and the Employment Application, including the Rule 2014 affidavit. *In re Michigan General Corp.*, 78 B.R. 479 (Bankr.N.D.Tex. 1987). Proper disclosure and evaluation of fee arrangements are required by 11 U.S.C. § 329 as necessary in the early stages of the case not only to avoid remedial adjustment of fees in later stages of the case but also to prevent the escalation of a potential conflict into an actual one. If allowed to percolate without proper disclosure, a conflict may mature and either disrupt the case to the detriment of the debtor, creditors or the estate or simmer below the horizons of view by the Court or creditors, thereby accomplishing real damage unperceived until incurable, except by disgorgement or disallowance of fees. Other "unattractive options" may be necessary, including appointment of a trustee with its associated expense, removal of counsel with its implications on the ability to reorganize, and continuation of the case in spite of the conflict with its attendant risks. *Michigan General*, 78 B.R. at 484. Such a result would affect not only the debtor's attorneys but also the estate and its creditors. *Id.*

■ The disclosure of the terms of the compensation agreement in the Employment Application, affidavit and 2016 Statement of Debtor's attorney was not only inadequate, but also, by omission, misleading. Taking a security interest in property of a debtor's estate to secure attorney's fees is not the custom and practice in this district. The conditional approval evidenced in the *Martin* case is too recent an authority to have created precedent for such an arrangement by the courts in this district or in this circuit. Moreover, even if there were such precedent, the arrangement is required by Bankruptcy Rule 2014 to be fully disclosed prior to appointment.

Debtor, through its attorneys, argues that appropriate disclosure has been made via the Debtor's Schedules and testimony at the § 341 Meeting. First, both such "disclosures" are inadequate disclosures to the Court. The Court has no duty to search the file to ferret out information of actual or potential adverse interests or other evidence of noncompliance with 11 U.S. C. § 327. It is the attorney's duty to so warn the Court. *In re Roberts*, 46 B.R. 815 at 839 (Bankr.D.Utah 1985). Also, unlike the 1898 Bankruptcy Act practice, pursuant to the Bankruptcy Code of 1978 at 11 U.S.C. § 341, the Judge no longer presides or is present at the § 341 meeting.

Second, both of these "disclosures" occurred *after* the Employment Application had been filed and *after* the Order of Ap-

---

5. 11 U.S.C. § 331 provides for applications for interim compensation every 120 days "or more often if the court permits." If the retainer sought appears sufficient to cover only a much shorter period of the initial phase of the case, it may be appropriate to allow the first application, at least, earlier in the case.

6. See, for example, the establishment of a procedure for monthly hearings and payments in the case of *In re International Horizons*, 10 B.R. 895, 898 (Bankr.N.D.Ga.1981).

pointment. The disclosure of compensation included with the Employment Application not only is inconsistent with the compensation arrangement set forth in the 2016 Statement, but also fails to disclose the actual nature and pertinent details of the agreement for compensation between Debtor and its attorneys.

Third, the manner in which the agreement was, in Debtor's attorney's view, "disclosed"—i.e., hints in the Rule 2016(b) disclosure statement form, additional revelations at the § 341 meeting upon inquiry by the U.S. Trustee, and further details at the hearing on the objections filed by the U.S. Trustee—in no way approaches the standard of full disclosure expected of court fiduciaries.[7] The disclosures themselves and the manner in which they were made in this case greatly enhance the likelihood that: (a) creditors and other parties with legitimate interests would perceive an impropriety, (b) the potential for conflict is greater, and (c) if approved, the resulting abuses in compensation arrangements in this and subsequent cases would encourage the potential conflicts the *Martin* court feared.

 The lack of disclosure given by the debtor's attorneys on behalf of the debtor begs one of three unattractive explanations, none of which are conducive to the standard of practice expected by the Bankruptcy Code or the Court. If the failure is attributed to oversight, the behavior denotes a degree of negligence which is unbecoming to an officer of the court who, by filing the pleadings herein criticized,

seeks to become a fiduciary of the estate. If the excuse is the failure to understand the importance of proper disclosure of the fee arrangement to the Court before appointment or to interpret the relevant law —for example, the recent First Circuit opinion in *Martin* cited by Debtor—that excuse no longer exists. Alternatively, the disclosures made and omitted evince an apparent intent to improperly circumvent the legitimate processes of examination of the fee arrangement demanded by the Bankruptcy Code and Rules.[8]

Proper and adequate notice is the most important element in all bankruptcy proceedings. In the context of an employment application, such notice, to be effective, requires disclosure. The disclosure must contain enough information as will reasonably convey the information required by 11 U.S.C. §§ 327 and 329 and Bankruptcy Rules 2014 and 2016.[9] It was, therefore, incumbent upon the debtor and its attorneys to make as full a disclosure as would normally be expected in an employment application to the court. Additionally, the Employment Application should have provided grounds for approval of the fee and security interest arrangement, citing both factual and legal bases therefor, and an order approving the arrangement should have been obtained *before* implementing it.

## CONCLUSION

 If employed without a specific, affirmative order therefor, which order must be supported by the appropriate disclosures required by 11 U.S.C. §§ 327 and

7. As an officer of the court and a fiduciary to the estate, counsel has a duty to disclose "any connection which may have any bearing on his disinterest." *In re Coastal Equities, Inc.*, 39 B.R. 304 (Bankr.S.D.Cal.1984).

8. Debtor asserts that the disclosure of its fee agreement with its attorneys has resulted in no objections filed by any creditors of the estate, thus evidencing "consent". As no notice was sent to creditors of the proposed employment and the fee arrangement, such creditor "consent" must be implied by the failure of a creditor, without notice of any reason to do so, to obtain and review the pleadings from the public records on file for the case, and to object. Such passive acquiescence cannot overcome the U.S.

Trustee's statutory duty to oversee applications filed under § 327. 28 U.S.C. § 586(a)(3)(H). Similarly, even affirmative creditor consent to employment of attorneys or to fee arrangements in violation of 11 U.S.C. § 327 would not obviate the duty of the Bankruptcy Court to enforce the statutory and ethical standards which govern the employment of fiduciaries. *In re Roberts*, 46 B.R. 815 at 844 (Bankr.D.Utah 1985).

9. As the United States Supreme Court in *Mullane v. Central Hanover Trust Company* said, "[t]he notice must be of such nature as reasonably to convey the required information, *Grannis v. Ordean*, [234 U.S. 385, 34 S.Ct. 779, 58 L.Ed. 1363 (1913)]...." 339 U.S. 306 at 314, 70 S.Ct. 652 at 657, 94 L.Ed. 865 (1949).

329 and by argument in support thereof, the security interest which Debtor's attorneys obtained to guarantee their fees violates 11 U.S.C. § 327. The lack of meaningful public notice and disclosure of the fee arrangement and its terms until challenged by the U.S. Trustee's motion violates both the spirit and the intent of the disclosures required by 11 U.S.C. §§ 327 and 329 and Bankruptcy Rules 2014 and 2016 in the application for appointment as a fiduciary of the estate. Debtor and Debtor's attorneys have failed to show that the arrangement was so necessary as to overcome the likelihood that an actual conflict of interest could develop. Furthermore, the failure to have not yet fully disclosed all the details of the compensation arrangement heightens the appearance of impropriety. Before determining whether the appointment should be vacated or continued, however, the Debtor and/or the Debtor's attorneys, together with the U.S. Trustee as Movant, shall have an opportunity to further supplement the record and address the issues elucidated herein. Accordingly, it is hereby ORDERED that:

(1) The law firm employed by the Debtor shall promptly divest itself of the security interest taken in Debtor's accounts, with the Court reserving judgment on the security interest taken in Debtor's real property until the hearing now set for April 19, 1988;

(2) No further payments shall be made by the Debtor to its attorneys without prior court approval. The attorneys' pending motion for interim compensation will be heard, as previously scheduled, April 19, 1988;

(3) At the April 19, 1988 hearing, the Court will also review:

(a) The necessity for any security interest;

(b) The report of Debtor to the Court on all of its unencumbered property, identifying the relationship of the property to the proposed plan of reorganization and the potential for conflict that a security interest in each such item of property might present;

(c) All factors leading Debtor's attorneys to believe the $50,000.00 security demanded in lieu of a retainer exceeding $1,000.00 was then, and is now, commensurate with the value of the services foreseeable during the first 30–90 days of this Chapter 11 case;

(d) The necessity for or advisability of the demand note taken;

(e) The nature and details of the existing compensation agreement;

(f) The nature and extent of a reasonable compensation agreement under the circumstances of this case.