**In re BOB'S SUPERMARKET'S, INC., f/d/b/a Bob's County Market, Bob's Super Value, Bob's State Avenue IGA, Debtor.**

**Bankruptcy No. 90–10814–011.**

United States Bankruptcy Court, D. Montana.

Jan. 6, 1992.

---

Harry D. Dixon, Jr., Jeffrey T. Wegner, Dixon & Dixon, P.C., Omaha, Neb., for debtor.

## ORDER

JOHN L. PETERSON, Bankruptcy Judge.

Counsel (Applicant) for the Debtor–in–Possession (DIP) filed, on November 8, 1991, a Final Application by Counsel for Bob's Supermarkets, Inc., for Compensation and Reimbursement of Expenses in the sum of $50,696.00 for fees and $11,967.87 for expenses, totaling $62,663.87.

Applicant requests an Order authorizing compensation and priority status pursuant to 11 U.S.C. §§ 330, 503, and 507 and to apply the $36,031.38 plus interest from a retainer paid to the applicant for payment of this allowed claim for compensation and expenses. Applicant previously filed, on July 25, 1991, an Interim Application which sought in excess of $50,000 in fees and expenses. This Court entered an Order on October 1, 1991, ("earlier Order") denying the application with leave to amend for several reasons. That earlier Order is hereby incorporated by reference into this Order.

The Final Application includes few if any of the reductions which this Court's earlier Order mandated, specifically with regard to attorney fees for research and interoffice conferences, and also does not address this

Court's earlier concern of the lack of information proving the necessity and actual costs of the expenses charged. Because of Applicant's failure to address this Court's concerns, this Court has had to completely re-analyze the fee application in its entirety.

In addition, the Applicant's answer to this Court's earlier concern about Applicant's failure to disclose its retainer agreement with the DIP fails to satisfy this Court. As a result, this Court has, for the following reasons, gone back through the entire fee application, made reductions where the Applicant failed its burden of proving the necessity or actual costs of various fees and expenses, and penalized Applicant for failure of its duty of disclosure under the Bankruptcy Code and Rules.

This Court's earlier Order cites the applicable law from *In re WRB–West Associates*, 9 Mont.B.R. 17, 18–20 (Bankr.Mont. 1990), the most important of which is:

> Pursuant to 11 U.S.C. §§ 327–330 and Bankruptcy Rules 2016 and 2017, this Court has an independent judicial responsibility to evaluate fees requested from the estate. *In re S.T.N. Enterprises, Inc.*, 70 B.R. 823, 831 (Bankr.Vt.1987); *In re Seneca Oil Co.*, 65 B.R. 902 (Bankr.W.D.Okla.1986); *In re Frontier Airlines, Inc.*, 74 B.R. 973 (Bankr.Colo. 1987). The burden of proof to show entitlement to all fees requested from the estate is on the applicant. *In re Lindberg Products, Inc.*, 50 B.R. 220, 221 (Bankr.N.D.Ill.1985). This burden is not to be taken lightly, especially given the fact that every dollar expended on fees results in a dollar less for distribution to creditors of the estate. *In re Yankton College*, 101 B.R. 151, 158 (Bankr.S.D. 1989); *In re Pettibone Corp.*, 74 B.R. 293, 305 (Bankr.N.D.Ill.1987). All expenses and fees must be shown as both actual and necessary under § 330(a)(2) of the Code. *S.T.N.*, supra at 834; *Yankton College*, supra at 158; *Seneca Oil*, supra at 912.

■ Under the preceding law, if an Applicant fails to satisfy its burden of proof by failing to include sufficient information to allow this Court to determine necessity or actual cost, then Applicant alone must bear the burden of its own failure by seeing its claimed fee or expense disallowed.

The Final Application, despite this Court's earlier Order requiring their deletion, shows numerous entries for research and interoffice conferences between Applicant's attorneys and staff. Such entries must be intricately scrutinized. *S.T.N.*, supra; *Seneca Oil*, supra. In this case, forty-two (42) hours of time is claimed for interoffice conferences between attorneys and staff, several of which lasted only .1 hours. Mr. Wegner explains in his supporting affidavit that the conferences were necessary in this case because of the complexity of the case, the need to utilize non-bankruptcy or less experienced attorneys for cost savings, and the need for one attorney who is the manager to have a "view of the case as a whole." Mr. Wegner states that he has already removed 161.0 hours and $9,033 in such interoffice conference fees from the application.

■ Upon review of the record, this Court finds that Applicant has failed its burden of proof to entitlement to fees for interoffice conferences. This Chapter 11 case has resulted in the sale of the DIP's business to another grocery store chain. Having observed the progression of this case, this Court notes that much of the complexity involved was of Applicant's own making. No sufficient explanation is given in the Final Application as to how counsel's duplicative efforts in interoffice conferences benefitted the estate. Accordingly, $4,130 must be deducted from this fee application.

■ The application contains billings for 64.5 hours of legal research by various attorneys, law clerks, and paralegals. Mr. Wegner states in his affidavit that the issues researched in this case were unique and that it is unlikely that such research will be useful in future cases. Regardless of that prediction, this Court finds that such research time benefits Applicant's knowledge base as well as the client. Accordingly, this Court sets the fee spent on

legal research at one-half of the customary fee. Therefore, $1,926 worth of research must be deducted from this fee application.

The following table shows the hours and fee reductions by person:

| | INTEROFFICE CONFERENCES | | RESEARCH | |
| --- | --- | --- | --- | --- |
| | Hours | Fee Reduction | Hours | Fee Reduction |
| Harry Dixon | 2.6 | $ 838.00 | | |
| Jeffrey Wegner | 12.0 | 1,440.00 | 1.0 | $ 78.00 |
| Michael Pankow | 12.4 | 930.00 | 8.1 | 303.75 |
| Jill Ross | 8.2 | 578.00 | 5.5 | 198.00 |
| William Harvey | | | 4.0 | 140.00 |
| Scott Coziahr | .3 | 19.50 | .3 | 19.50 |
| Kathryn Derr | .7 | 45.50 | 15.1 | 490.75 |
| Janice Warm | 4.5 | 247.50 | | |
| Laurie Steiger | .5 | 22.50 | | |
| Michael Mills | | | 10.7 | 240.75 |
| Jeanne Burke | .2 | 9.00 | 12.1 | 272.25 |
| Steve Schaal | | | 3.9 | 97.50 |
| Rick Loftsgard | .2 | 9.00 | 3.8 | 85.50 |
| Lorrie Dahl | .4 | 18.00 | | |
| Total | 42.0 | $4,130.00 | 64.5 | $1,926.00 |

Total Fee Reduction: $6,056.00

As stated in this Court's earlier Order, Harry Dixon's fee must be reduced from $175 to $130 per hour, the maximum attorney fee allowed by this Court, absent any testimony as to market rate. Applicant completely ignored that part of this Court's earlier Order in its Final Fee Application, continuing to insist on a $175 fee for Mr. Dixon without any supporting evidence. This Court finds that Applicant has failed its burden of proof that the higher fee is necessary to the estate. Since Applicant chose to ignore this Court's earlier Order, this Court shall make the fee reduction of $499.50 to bring Mr. Dixon's fee in accordance with the local maximum.

■ A further reduction is necessary for Mr. Dixon's and Mr. Wegner's travel time. This Court allows travel time at half the attorney's usual fee. Therefore, Mr. Dixon's fee must be further reduced by $266.50 for his 4.1 hours of travel time. Mr. Wegner claims 22.5 hours of travel time at $120/hour and 42.1 hours at $110/hour. Mr. Wegner's fee request is therefore reduced by $3,665.50 for travel time.

■ Review of the costs requested in Exhibit "B" shows total entries of $942.18 for "LEXIS CHARGES," or computer research. This Court finds that such charges are akin to overhead and to the costs of maintaining a library. As such, any charges for computer research must be deducted from any costs requested. *See, In re Bicoastal Corporation,* 121 B.R. 653, 656 (Bankr.M.D.Fla.1990). Applicant refused to follow this Court's earlier Order in its final Fee Application, instead claiming an increased amount of computer research expense. Mr. Wegner in his affidavit justified this refusal by claiming that the issues in this case were unique and would not be useful to the firm in future cases. Upon review of the record, this Court finds that Applicant has failed to satisfy its burden of proving that the computer research charges were necessary to the estate, or in any way unique to this case. Since Applicant refuses to make the reduction, this Court disallows the entire $942.18 charge for computer research.

■ Exhibit "B" also shows total entries for "Telecopy" of $1,217.35, without any

explanation of how such charges are necessary or reasonable or even what was telecopied. Applicant charged telecopies initially at $3 for the first page and $1.25 for each additional page. Later Applicant charged $1 for the first page and actual long distance charges for each page thereafter. Nowhere does the Applicant supply the required actual cost of the telecopies.

Applicant initially charged $.20 per page for photocopies, later reducing that to $.12 per page, based on the standard rate for photocopies in Omaha, Nebraska. Applicant requests $756.68 for photocopy expense. Nowhere does the Applicant indicate the actual cost of the copies. Neither does Applicant describe what was photocopied and why it was necessary to the estate. This Court allows charges for copies which are reasonable and necessary to justify such rate and the necessity for the copies. This Court's earlier Order allowed Applicant the opportunity to amend its application to provide the detail showing the necessity and the actual cost, yet no such detail was provided.

Upon review of the record, this Court finds that the Applicant has again failed its burden of proving the actual cost of the photocopy expense and the telecopy expense. A recent bankruptcy case from Utah states:

> Although the court in *Seneca*, 65 B.R. at 913, allowed photocopying at rates "comparable to the rates charged by commercial shops in the area" as "obviously reasonable," the court added that the "estate should be required to bear only the actual expenses incurred and professionals will normally not be allowed any amounts in addition to their out-of-pocket costs."

*In re C F & I Fabricators of Utah, Inc.*, 131 B.R. 474, 494 (Bankr.D.Utah 1991).

In addition, this Court finds that the Applicant has failed its burden of proving that the photocopy expense and the telecopy expense were necessary for the estate. Since Applicant has failed its burden of proof as to the actual costs and necessity of the photocopies and telecopies, this Court reduces its award for photocopy expense by $550, and reduces its telecopy expense by $800.

■ Entries under "Federal Express" total $374.75 without any detail of what was express mailed, why it was necessary to the estate, and without explanation of why the regular mail system was inadequate. Mr. Wegner stated in his affidavit that express mail and telecopies were used only when first-class mail would not have been timely. However, there is not sufficient detail in the final Fee Application to enable this Court to determine whether these charges are reasonable and necessary. Given the size of the request for telecopies and express mail, this Court questions whether adequate planning might have reduced the need for so many last-minute transmittals of documents. Upon review of the record, this Court finds that the Applicant has failed its burden of proving that the express mail charges were necessary to the estate, and disallows $200 of the claimed Federal Express charges. This Court finds the remainder of the fees and costs requested to be reasonable and necessary.

■ The most troubling issue in this matter is the Applicant's failure to disclose the retainer in its Application for Approval of Employment of Attorneys for the Debtor, filed May 30, 1990. A $45,000 retainer is listed in Debtor's Statement of Financial Affairs, Item 20, filed June 25, 1990. No date is included for the payment of that retainer, even though F.R.B.P. 2014(a) requires that an application for employment must include any proposed arrangement for compensation. This Court approved Applicant's employment without being informed of the retainer payment. This Court expressed its concern in its earlier Order.

■ Mr. Wegner's response in his affidavit is that his "understanding" of the Bankruptcy Rules "is that a disclosure of compensation to be paid is required and not a disclosure of a retainer." Mr. Wegner further states that the general retainer was disclosed elsewhere by the Debtor, from which fees were deducted for services ren-

dered prior to the Chapter 11 filing. Mr. Wegner's assertion that disclosure of a retainer is not required by the Bankruptcy Code and Rules is in error, as recently stated in *In re Saturley*, 131 B.R. 509, 516–517 (Bankr.D.Me.1991):

> Disclosure of counsel's fee arrangements with the debtor is essential to effective exercise of the court's power to pass on fee applications. A debtor's counsel has an affirmative duty punctiliously to disclose *all* its connections with the debtor, including fees paid in the year preceding the bankruptcy filing. 11 U.S.C. § 329(a); B.R. 2016(b). *See, e.g., In re Film Ventures International, Inc.*, 75 B.R. 250, 252 (9th Cir.BAP 1987); *In re Kendavis Industries International, Inc.*, 91 B.R. 742, 759 (Bankr. N.D.Tex.1988); *In re Kero–Sun, Inc.*, 58 B.R. 770, 777–778 (Bankr.D.Conn.1986).

Just as counsel seeking approval of employment must come forward with full, candid and complete disclosures to enable parties-in-interest and the court to assess the propriety of employment, *In re Apex Oil Co.*, 128 B.R. 671, 21 B.C.D. 1441, 1443 (Bankr.E.D.Mo.1991); *In re B.E.S. Concrete Products, Inc.*, 93 B.R. 228, 237 (Bankr.E.D.Cal.1988), so must debtor's counsel lay bare all its dealings, antecedent and anticipated, regarding compensation for work "in contemplation of or in connection with" the case. 11 U.S.C. § 329(a). *See In re Flying E Ranch Co.*, 81 B.R. 633, 637 (Bankr. D.Colo.1988). *See also In re Martin*, 817 F.2d 175, 182 (1st Cir.1987) (discussing necessity of full disclosure of arrangements to secure payment of fees to debtor-in-possession's counsel so that the court may intelligently assess conflicts which may give rise to disqualification).

Counsel's fee revelations must be direct and comprehensive. Coy or incomplete disclosures which leave the court to ferret out pertinent information form other sources are not sufficient. *In re Automend, Inc.*, 85 B.R. 173, 178 (Bkrtcy.N.D.Ga.1988). *In re Flying E. Ranch Co., supra, In re Michigan General Corp.*, 78 B.R. 479, 482 (Bankr. N.D.Tex.1987).

Anything less than the full measure of disclosure leaves counsel at risk that all compensation may be denied. *In re Futuronics Corp.*, 655 F.2d 463 (2d Cir. 1981); *cert. denied* 455 U.S. 941, 102 S.Ct. 1435, 71 L.Ed.2d 653 (1982); *In re Arlan's Dept. Stores, Inc.*, 615 F.2d 925 (2nd Cir.1979). *In re Film Ventures International, Inc.*, 75 B.R. at 252; *In re Kendavis Industries International, Inc.*, 91 B.R. at 759; *In re Devers*, 33 B.R. 793, 799 (D.D.C.1983); *In re Kero–Sun, Inc.*, 58 B.R. at 778; *In re Meyer*, 50 B.R. 3, 4 (Bankr.S.D.Fla.1985); *In re Hawaii General Corp.*, 35 B.R. 789, 792 (Bankr.D.Haw.1983). The court may exercise its discretion to deny or reduce fees for counsel's failure to disclose its fee arrangements whether or not actual harm accrues to the estate. *In re Futuronics Corp., supra*, 655 F.2d at 471; *In re Devers, supra*. Because it fosters the potential to frustrate meaningful inquiry by the court and others, failure to file the rule 2016 statement can be, in and of itself, grounds for denying counsel any compensation. *See, e.g., In re Kendavis Industries International, Inc.*, 91 B.R. at 759. Whatever the explanation for disclosure inadequacies, it reflects poorly on responsible counsel; *In re Automend, Inc.*, 85 B.R. at 179; and the resulting potential for frustration of the Code's policy of thorough scrutiny is unacceptable. *In re Devers*, 33 B.R. at 799.

\*    \*    \*    \*    \*    \*

To condemn these shortcomings is not simply nitpicking. Neither does it represent inflexible insistence that counsel strictly satisfy sterile formalities. Timely, thorough and ingenuous disclosures are essential to implementing the Code's policies protecting the integrity of the bankruptcy process. Recognizing that denial of fees in the face of such shortcomings is discretionary, *In re Anderson*, 936 F.2d 199, 204 (5th Cir. 1991); *In re Film Ventures International, Inc., supra*, 75 B.R. at 553, the court observes that winking at disclosure deficiencies of the dimension present here only would serve to misinform. Ac-

cordingly, as to all compensation sought for services rendered after November 6, 1990, counsel's application must be denied.

Under the preceding authority, this Court clearly has the discretion to deny all compensation to the Applicant for failure to reveal the retainer agreement at the time of its appointment as counsel to the Debtor–In–Possession. This Court finds that Applicant failed its duty of full, candid, and complete disclosure in its employment application, and also in the employment application for the accountant in this case, when it failed to disclose in the employment applications the retainers paid by the DIP. Other bankruptcy courts have denied all compensation, as revealed in *In re Fricker*, 131 B.R. 932, 939 (Bankr. E.D.Pa.1991):

> Thus, in *In re Kero–Sun, Inc.*, 58 B.R. 770 (Bankr.D.Conn.1986), mistaken omission of a disclosure of counsel's pre-petition agreement to be paid $75,000 by the debtor's lenders in the 2016(b) Statement resulted in an order that the entire $75,000 sum be turned over to the debtor's estate, in keeping with the policy of upholding the disclosure requirements with an "inflexible standard." *Id.* at 779–80.

Based on the circumstances of the instant case, and recognizing that the Applicant provided valuable services which benefitted the creditors and the Debtor–In–Possession, this Court will not deny the application in its entirety. However, the failure to disclose, and Applicant's insistence that disclosure is not required, reflect poorly on the Applicant, and a penalty is appropriate. At issue is the amount of an appropriate penalty.

> It is clear that, while this court would be totally justified in compelling Counsel to disgorge *all* fees paid to it by the Debtors, this court also has the discretion to more perfectly fit the "punishment" to the particular "crime". *See, e.g., Anderson, supra,* 936 F.2d [201] at 204–06 (counsel awarded $82,500 out of $318,830 requested because of receipt of undisclosed retainer); *In re New England Caterers, Inc.,* 115 B.R. 724, 730–31

(Bankr.D.Mass.1989) (although counsel was found to have been guilty of "inexcusable lack of candor in breach of its fiduciary duty to the Court" for failing to disclose the receipt of monthly retainers from the debtor for one year, a sanction of reducing the fee award by fifty (50%) percent was all that was imposed); and *In re D.L. Enterprises,* 89 B.R. 107, 110–12 (Bankr.C.D.Cal.1988) (failure of counsel to make full disclosure sanctioned by reduction of fee request of about $50,000 by $13,345).

*In re Fricker,* 131 B.R. 932, 944 (Bankr. E.D.Pa.1991).

In order to assure that Applicant fully appreciates the consequence of its failure of the duty to disclose its retainer agreement, this Court disallows $10,000 from the Final Fee Application, being approximately 20% of the requested fee, in addition to the other reductions found elsewhere in this opinion. The other reductions total $10,487.50 from the attorneys' fees and $2,492.18 from expenses.

As the court stated in *Saturley* above, it is not enough that the retainer agreement is disclosed somewhere in the file. "The Court has no duty to search the file to ferret out information of actual or potential adverse interests or other evidence of noncompliance with 11 U.S.C. § 327. It is the attorney's duty to so warn the court. *In re Roberts,* 46 B.R. 815 at 839 (Bankr.D.Utah 1985)." *In re Automend,* 85 B.R. at 178. Mr. Wegner's "understanding" in his affidavit that he is required to disclose compensation but not retainer agreements is patently erroneous. Absence of actual harm to the estate does not excuse Applicant's failure to disclose the retainer.

IT IS ORDERED Applicant is awarded attorneys' fees in the amount of $30,208.50 and reimbursement of costs and expenses in the amount of $9,475.69.

IT IS FURTHER ORDERED Applicant is hereby authorized to apply the remaining retainer payment to the above award for fees and expenses, and the Debtor–In–Pos-

session is authorized to pay to the Applicant the difference.