William H. CRUMBAKER, Petitioner,

v.

MERIT SYSTEMS PROTECTION BOARD, Respondent.

Appeal No. 85–1982.

United States Court of Appeals, Federal Circuit.

Jan. 8, 1986.

Sheri Frumer, Gardere and Wynne, Dallas, Tex., argued, for petitioner. With her on the brief was Ronald M. Gaswirth, Dallas, Tex.

Stephanie Conley, Merit Systems Protection Bd., Washington, D.C., argued, for respondent. With her on the brief were Evangeline W. Swift, Gen. Counsel, Mary L. Jennings, Associate Gen. Counsel, for Litigation and David Kane, Reviewer, Washington, D.C., for Litigation.

Before MARKEY, Chief Judge, DAVIS, and BISSELL, Circuit Judges

BISSELL, Circuit Judge.

Petitioner Crumbaker appeals from a final decision of the Merit Systems Protection Board (Board), Docket No. SE07528090084ADD, reported at 24 M.S.P.R. 627 (1984), asserting error in the quantum of fees awarded. We reverse and remand.

## BACKGROUND

On February 29, 1980, the agency removed Crumbaker from his position with the Department of Labor. He appealed that action to the Board. The presiding official found that only two of three charges were sustained and that removal was not an appropriate penalty. The full Board granted the agency's petition for review and modified to a fourteen-day suspension the agency's removal action.

Crumbaker subsequently filed with the Board a motion for attorney fees based on 5 U.S.C. § 7701(g)(1). The presiding official found that the fees were incurred and that Crumbaker was the prevailing party. He also found that fees were warranted in the interest of justice because the agency acted in bad faith. He then considered what amount of fees would be reasonable by computing a lodestar figure and then adjusting that figure based on the contingent nature of the fee. In computing the lodestar figure, the presiding official reviewed the customary hourly billing rate and the number of hours devoted to the case, reduced both the rate and the hours claimed by the senior partner (Gaswirth) and the principal associate (Morris), and then multiplied the resulting rates and hours, the product being the lodestar figure. Next, the presiding official considered the claimed 100% upward adjustment on the contingency portion of the fee, and reduced that adjustment to about 25%. He did not address the adjustment claimed due to delay in receipt of payment.

Crumbaker appealed to the full Board, challenging the reduction in rates, hours, and lodestar adjustment, as well as the failure to address a supplemental fee re-

quest. The Board modified the presiding official's fee award.

The Board found that the actual rates claimed were reasonable and in accord with prevailing community standards. Accordingly, the Board, after correcting the presiding official's misreading of some claimed rates, awarded the rates claimed, except for the rate claimed for ten hours of travel time. The Board held that it was inappropriate to compensate travel time at the same rate as legal work and so awarded a rate of $20 per hour.

The Board reviewed the hours awarded in each of the four phases of the case, and corrected the presiding official's several mistakes in addition. The Board also corrected his failure to address the request for preparing a post-trial brief and a reply brief, as well as his failure to address the request for the lead counsel's time in the last phase. The Board awarded the amounts claimed for those two requests, but otherwise made no change to the total number of hours awarded by the presiding official.

The Board next reviewed a supplementary fee request for, among others, attempts to compel agency compliance with the Board's order, a request the presiding official failed to address. The Board found the requested amount reasonable and added that amount to its fee award. This is not an issue on appeal.

Finally, the Board reviewed the requested adjustments to the lodestar figure and found that any upward adjustment was unwarranted.

On appeal to us Crumbaker alleges error in the Board's reduction of the claimed billing rate for travel time, reduction of the claimed number of billable hours, and denial of an adjustment in the lodestar figure.

## OPINION

### I *Travel Time*

■ Crumbaker asserts that the Board's decision to reduce the billing rate for travel time is contrary to law. We agree.

In its decision, the Board relied on one of its own cases, *Mitchell v. Department of Health and Human Services*, 19 M.S.P.R. 206 (1984). In that case the Board stated that:

> lawyers should not be compensated at their usual rate for work which is normally done by nonlegal personnel such as clerical or paralegal workers. ... Similarly, we believe it is inappropriate for counsel's travel time to be compensated as legal work, and we adopt the presiding official's proposed $20 an hour for travel time as the presumptive appropriate rate, absent convincing evidence that the lawyer's own rate or some other rate is the general billing practice in the community.

*Id.*, at 214–215.

Crumbaker argues that the Board's decision in his case is inconsistent with its own analysis in *Mitchell* which focused on the general billing practice in the community, that is, the fair market value of the attorney's services. We, however, do not rest our decision on such an argument.

The government defends the Board decision by citing a number of district court cases arguably consistent with it. *See, e.g., Sun Publishing Co. v. Mecklenburg News, Inc.*, 594 F.Supp. 1512 (E.D.Va.1984); *Davis v. Reed*, 72 F.R.D. 644 (N.D.Miss. 1976). Of course, there are also cases to the contrary, both in the district courts, *see, e.g., Rakovich v. Wade*, 602 F.Supp. 1444, 1451 (E.D.Wis.1985); *International Wood Processors v. Power Dry, Inc.*, 598 F.Supp. 299, 303 (D.S.C.1984), and in the circuit courts, *see, e.g., Henry v. Webermeier*, 738 F.2d 188 (7th Cir.1984). We are persuaded that the analysis in *Henry v. Webermeier* is the better reasoned approach:

> Probably [the appropriate billing rate] is the same billing rate as would be appropriate for the other time the lawyers put in on the case. When a lawyer travels for one client he incurs an opportunity cost that is equal to the fee he would have charged that or another client if he had not been traveling. That is why

lawyers invariably charge their clients for travel time, and usually at the same rate they charge for other time, except when they are able to bill another client for part of the travel time (a lawyer might do work for client A while flying on an airplane to a meeting with client B). And if they charge their paying clients for travel time they are entitled to charge the defendants for that time in a case such as this where the plaintiffs have shown a statutory right to reasonable attorneys' fees. Of course, if the travel is unnecessary the time spent in travel should be subtracted out, *cf. Hensley v. Eckerhart,* [461 U.S. 424 at 434], 103 S.Ct. [1933] at 1939–40 [76 L.Ed.2d 40]; but that, as we have said, is not an issue here. If, though reasonable in terms of the amount of time consumed, the travel is unnecessarily luxurious, the court should not reimburse the plaintiffs for the entire out-of-pocket expenses of travel; but that is a completely separate issue from the hourly billing rate and an issue that the defendants will be entitled to explore on remand. The presumption, which the defendants have not attempted to rebut, should be that a reasonable attorney's fee includes reasonable travel time billed at the same hourly rate as the lawyer's normal working time.

*Id.* at 194; *accord Craik v. Minnesota State University Board,* 738 F.2d 348, 350 (8th Cir.1984). This approach is consistent with the purpose of 5 U.S.C. § 7701(g)(1), which has "a general goal of removing impediments to the litigation of a meritorious claim." *Sterner v. Department of the Army,* 711 F.2d 1563, 1570 (Fed.Cir.1983); *cf. Keely v. Merit Systems Protection Board,* 760 F.2d 246, 249 (Fed.Cir.1985) (purpose of Equal Access to Justice Act, eliminating legal expense as barrier to challenges of unreasonable governmental action, similar to purpose of § 7701(g)(1) ).

In addressing the presiding official's reduction of the claimed rate, the Board noted that the billing rates charged to Crumbaker "were charged to *all* clients for whom they worked," and the Board found that "the actual rates claimed by counsel are reasonable and in accord with prevailing community standards." *Crumbaker v. Department of Labor,* 24 M.S.P.R. at 631 (emphasis in original). Thus, the Board's reduction in the rate for travel time was not because that rate was other than the prevailing rate. Rather, it was because the Board regarded compensation for counsel's travel time at the same rate as other legal work "inappropriate." *Id.,* at 632. That decision is not in accordance with law and we reverse it. 5 U.S.C. § 7703(c)(1) (1982).

## II   *Billable Hours*

Crumbaker also asserts that the Board's decision to reduce the number of documented hours is arbitrary, capricious, and contrary to law. We agree.

The Supreme Court addressed the issue of billable hours in the context of a district court's determination of a reasonable fee:

The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly.

The district court also should exclude from this initial fee calculation hours that were not "reasonably expended." S.Rep. No. 94–1011, p. 6 (1976). Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. "In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." *Copeland v. Marshall,* 205 U.S.App.D.C. 390, 401, 641 F.2d 880, 891 (1980) (en banc) (emphasis in original).

*Hensley v. Eckerhart,* 461 U.S. 424, 433–34, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983).

When a party submits a request for an award of fees, the presiding official must make a determination whether the hours claimed are justified. *See National Association of Concerned Veterans v. Secretary of Defense*, 675 F.2d 1319, 1327 (D.C.Cir.1982). Like a district court judge entertaining a request for statutory fees, the presiding official "has to make a judgment—considering the nature of the case and the details of the request, taking evidence if need be, and defending his judgment in a reasoned (though brief) opinion—on what the case should have cost the party who submitted the request." *Heiar v. Crawford County, Wisconsin*, 746 F.2d 1190, 1204 (7th Cir.1984), *cert. denied*, — U.S. ——, 105 S.Ct. 3500, 87 L.Ed.2d 631 (1985). Accordingly, in the factual situation presented here we apply to the Board decision the following standard another circuit court applies to its district courts:

> The hours claimed need not be automatically accepted by the district court, but to the extent that hours are rejected, the court must indicate some reason for its action, so that we may determine whether the court properly exercised its discretion or made an error of law in its conclusion. . . .
>
> . . . [W]e hold that if a district court decides to eliminate hours of service adequately documented by the attorneys, it must identify those hours and articulate its reasons for their elimination.

*Northcross v. Board of Education*, 611 F.2d 624, 636–37 (6th Cir.1979), *cert. denied*, 447 U.S. 911, 100 S.Ct. 3000, 64 L.Ed.2d 862 (1980). We leave for another day whether the Board must identify the eliminated hours in a different factual situation. *See Heiar v. Crawford County, Wisconsin*, 746 F.2d at 1204 (suggesting not worth judge's time where small amount of $1,000 requested); *New York Association for Retarded Children v. Carey*, 711 F.2d 1136, 1140–41, 1146 (2d Cir.1983) (unrealistic to expect trial judge to evaluate every entry in voluminous application requesting $2.5 million for 16,410 hours).

There is no suggestion here that the documentation of hours claimed was inadequate. Nor is there any indication that the government offered any evidence or reasoned analysis in support of its contention that the number of hours claimed was excessive; there is not even any evidence of the amount of time the government spent on the case. *See Sierra Club v. Environmental Protection Agency*, 769 F.2d 796, 807 (D.C.Cir.1985). Rather, the presiding official was apparently trying to "impose fair standards of efficiency and economy of time. . . . In making this determination, I am also weighing the time claimed against my expertise and experience, the experience of counsel and the complexity of the case." *Crumbaker*, at 632 (Dec. 31, 1981). Courts have recognized the importance of similar considerations. *See, e.g., Gabriele v. Southworth*, 712 F.2d 1505, 1507 (1st Cir.1983) (judge to draw on own experience and wisdom in deciding whether time spent was in excess of reasonable amount). Nevertheless, that did not relieve the Board from providing "a concise but clear explanation of its reasons." *Hensley v. Eckerhart*, 461 U.S. at 437, 103 S.Ct. at 1941.

Instead of such an explanation, the presiding official all too often here simply concluded that certain hours claimed were excessive. Similarly, the Board, reviewing a disallowance of hours which the presiding official failed to so much as comment on, stated merely that "the record suggests duplicative effort." 24 M.S.P.R. at 633. Conclusory remarks like those are wholly inadequate under the required standard. Accordingly, on remand the Board will examine the record, take evidence if need be, and make its determination supported by a concise but clear *explanation* of its reasons for any reduction of the hours awarded from those claimed in each of the four phases.

### III *Adjusting the Lodestar*

Crumbaker alleges error in the Board's denial of an upward adjustment in the lodestar figure. He maintains that an adjustment is warranted due to the delay in the receipt of the fee, the risk associated with

the contingent nature of the fee, and the quality of service rendered. We address each contention in turn.

## A

■ Crumbaker maintains that the Board abused its discretion in considering the delay issue. We agree. In its decision, the Board stated:

> [I]n response to counsel's contention that an upward adjustment for delay in payment is appropriate, the Board notes that "[s]ome delay in receipt of payment is inevitable in the law as in any other service profession. Accordingly, any minimal delay may be properly ignored ... in setting a fee award." *National Association of Concerned Veterans v. Secretary of Defense*, 675 F.2d 1319 at 1328 (D.C.Cir.1982).

*Crumbaker*, 24 M.S.P.R. at 635.

The Board cited a valid proposition of law yet misapplied it to the facts of the case. At the time the Board released its decision, the delay in this case had already extended more than five years. By no stretch of the imagination is that a "minimal" delay. As another court has observed, "[t]he hourly rates used in the 'lodestar' represent the prevailing rate for clients who typically pay their bills promptly." *Copeland v. Marshall*, 641 F.2d 880, 893 (D.C.Cir.1980) (en banc).

The delay in paying the fees in this case "deprives the eventual recipient of the value of the use of the money," *id.*, and renders the awarded amount unreasonable. On remand, the Board will calculate an adjustment to the lodestar figure reflecting the delay in receipt of payment.

## B

■ Crumbaker asserts that the Board failed adequately to consider the risk borne by his counsel as a result of accepting the case on a contingency fee basis. We agree.

The purpose of a contingency adjustment to the lodestar figure has been addressed by other courts in the context of other statutes such as Title VII of the Civil Rights Act of 1964, *see, e.g., Copeland v. Marshall*, 641 F.2d at 892–93 (gender discrimination suit against Department of Labor); *National Association of Concerned Veterans v. Secretary of Defense*, 675 F.2d at 1328 (purpose to provide adequate compensation to counsel), and the Civil Rights Attorney's Fees Awards Act of 1976, *see, e.g., Northcross v. Board of Education*, 624 F.2d at 638 (contingency factor not a bonus but is part of the reasonable compensation to which a prevailing party's attorney is entitled). Although there may be differences in other respects, *see Goodrich v. Department of the Navy*, 733 F.2d 1578, 1580 (Fed.Cir.1984) (contrary to policy behind Civil Rights Act, no policy to *encourage* suit by federal employees challenging adverse personnel actions), the Supreme Court has announced that "[t]he standards set forth in this [Civil Rights case] opinion are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.'" *Hensley v. Eckerhart*, 461 U.S. at 433 n. 7, 103 S.Ct. at 1939 n. 7; *see Devine v. Sutermeister*, 733 F.2d 892, 897 n. 4 (Fed.Cir.1984). Permitting a contingency adjustment to the lodestar figure is consistent with the Board's interpretation of its authority, *Kling v. Department of Justice*, 2 MSPB 620, 627, 2 M.S.P.R. 464, 473 (1980) (when counsel's compensation is contingent on success, may be appropriate to adjust award upward to compensate for risk of not being paid at all) (citing *Northcross v. Board of Education*, 611 F.2d at 638), and we believe "does no violence to the congressional understanding of the term" attorney fees. *Bennett v. Department of the Navy*, 699 F.2d 1140, 1145 (Fed.Cir. 1983); *cf. Goodrich v. Department of the Navy*, 733 F.2d at 1579 (affirming Board calculation which doubled lodestar to reflect union's overhead costs). In our view, this approach to a contingency adjustment is applicable to this case: "It is important to recognize that the contingency adjustment is designed solely to compensate for the possibility at the outset that the litigation would be unsuccessful and that no fee would be obtained." *Copeland v. Mar-*

*shall*, 641 F.2d at 893. That is why "[i]t is unnecessary to increase an attorney fee award to reflect the risk that the suit would not be successful if counsel would have been paid by his client regardless of the outcome." *National Association of Concerned Veterans v. Secretary of Defense*, 675 F.2d at 1328.

In its decision, the Board stated that: before accepting the case on a contingency fee basis, counsel had concluded that the egregious deficiencies in the agency's investigation of appellant precluded a successful termination action.... Consequently, risk as regards unlikelihood of success came into play at a time when counsel knew enough to make a very informed judgment on the matter. *Gibson v. Dept. of Justice*, 11 MSPB 78, 83, [12] M.S.P.R. [436, 443] (1982).

*Crumbaker*, 24 M.S.P.R. at 635. Again the Board has misapplied its cited authority. Unlike the case here, in *Gibson* there was no risk of nonpayment because "appellant's attorney was guaranteed payment regardless of the outcome." 11 MSPB at 83. On appeal, the government's position continues to be that the Board properly refused to adjust the fee because "as experienced labor counsel [Crumbaker's counsel] must have known that the agency could not prevail." That is a position that Crumbaker aptly describes as inane. The Board agreed with the presiding official that the case focused on credibility of witnesses, *Crumbaker*, 24 M.S.P.R. at 632, which as a practical matter may require of counsel the most complex footwork. The agency removed Crumbaker despite his counsel's belief in the deficiencies in the agency's case, the agency vigorously contested factual matters, and the agency ultimately won on two of the three charges. Moreover, it has been recognized that "attorneys can never be 100% certain they will win even the best case." *Hensley v. Eckerhart*, 461 U.S. at 449, 103 S.Ct. at 1947 (Brennan, J., concurring in part and dissenting in part).

There was some risk in this case that the litigation would have been unsuccessful

and thus that no fee would be obtained. Because the rates used in computing the lodestar figure do not account for this risk, the unadjusted fee awarded by the Board was not reasonable. On remand, the Board will enhance the lodestar figure to compensate counsel for the risk borne.

### C

■ Crumbaker maintains that an adjustment of the lodestar figure is warranted by the quality of representation: his counsel's unusual ability to economize on time coupled with the degree of success obtained. Crumbaker argues that "counsel's extraordinary knowledge of the workings of the Agency enabled Mr. Gaswirth to avoid expending costly time familiarizing himself with the Agency and its personnel and performing formal depositions and other discovery." We agree that counsel exhibited special skill and experience; however, we do not agree that the success obtained was exceptional.

The Supreme Court addressed the quality of representation factor in reviewing a district court's fee award enhanced on that basis. Agreeing that the quality of representation in that case was high, the Court went on to state:

The "quality of representation," however, generally is reflected in the reasonable hourly rate. It, therefore, may justify an upward adjustment only in the rare case where the fee applicant offers specific evidence to show that the quality of service rendered was superior to that one reasonably should expect in light of the hourly rates charged and that the success was 'exceptional.'

*Blum v. Stenson*, 465 U.S. 886, 899, 104 S.Ct. 1541, 1549, 79 L.Ed.2d 891 (1984).

Under this standard, we conclude that an adjustment is not warranted. It appears from the record that Gaswirth personally knew most of the senior management officials of the agency, which enabled him to avoid expending time familiarizing himself

with the agency and its personnel, and performing formal depositions (with the associated travel time and costs) and other discovery. However, it also appears that the Board accounted for this special skill and experience in determining the reasonable rate. The Board observed that "[a]lthough counsel did an extremely thorough job of representing appellant, his skill level is reflected in his hourly rates." *Crumbaker*, 24 M.S.P.R. at 635. This is consistent with *Blum* and is not an abuse of discretion.

### IV  *Fees for Judicial Review*

Crumbaker requests an award of attorney fees for the time devoted to the appeal of the Board's decision to this court. Crumbaker relies on a pair of decisions from this circuit holding that an award of fees for the judicial proceedings portion of a Board case is covered by the Equal Access to Justice Act, 28 U.S.C. § 2412 (1982). *Austin v. Department of Commerce*, 742 F.2d 1417 (Fed.Cir.1984); *Olsen v. Department of Commerce*, 735 F.2d 558 (Fed.Cir. 1984). The government urges us to deny the request as premature or, alternatively, to remand the case to the Board for a determination of the amount of a reasonable fee under the provisions of the Back Pay Act, 5 U.S.C. § 5596(b)(1)(A)(ii) (1982).

Whether *Olsen* and *Austin* were correctly decided is a question currently being considered by this court in banc. *Gavette v. Office of Personnel Management*, 765 F.2d 158 (Fed.Cir.1985), *rehearing in banc granted* (Fed.Cir. May 23, 1985). It seems the result in that case will control the outcome here and we express no opinion on it now. Crumbaker may renew his request by motion if this court's decision in *Gavette* so warrants.

### CONCLUSION

The decision of the Board is reversed and the case is remanded to the Board for a determination of a reasonable fee. Crumbaker is entitled to his costs on this appeal.

REVERSED AND REMANDED