**In re Glen David LOWE, SSN 440–52–7324, and Stella Doreen Lowe, SSN 442–52–8802, Debtors.**

**Bankruptcy No. 93–70381.**

United States Bankruptcy Court, E.D. Oklahoma.

June 21, 1994.

Kurt M. Anderson, Tulsa, OK, for trustee.

Kirk J. Cejda, Oklahoma City, OK, for creditor Countrywide Funding Corp.

Robert Inglish, Okmulgee, OK, for James and Jeanne Lynch.

### MEMORANDUM OPINION

TOM R. CORNISH, Bankruptcy Judge.

When James and Jeanne Lynch, husband and wife, purchased their new home at the Trustee's auction in Poteau, Oklahoma, they could not have anticipated the procedural nightmare that would unravel. After making substantial improvements, and after being told by a local title attorney that it would be all right for them to move into the house prior to closing, this litigation has indeed created a monster that cannot easily be slain. The Lynches remain ready and willing to close this transaction.

On May 11, 1994, an evidentiary hearing was held by this Court. Counsel appearing in person were Bob Inglish for Jeanne and James Lynch; Kirk Cejda for Countrywide Funding Corporation ("Countrywide"); Kenneth G.M. Mather, the Chapter 7 Trustee; and Kurt Anderson, counsel for the Chapter 7 Trustee.

After a review of the pleadings and evidence, this Court does hereby enter the following findings and conclusions in conformity with Rule 7052, Fed.R.Bankr.P., in this core proceeding:

### FINDINGS OF FACT

1. The Debtors filed a voluntary Chapter 7 bankruptcy petition on April 5, 1993. On Schedule D, Debtors listed Countrywide as having a first mortgage on the Debtors' homestead, while a second mortgage, not involved here, existed in favor of Paul and Gene Balentine. On Schedule A, the Debtors described the property as having a $51,000 encumbrance with a fair market value of $63,000. The real property was described as follows:

NE/4 NE/4 SW/4, Section 3, Township 7 North, Range 25 East, LeFlore County, Oklahoma.

2. On May 24, 1993, the Trustee filed his Motion for Authority to Sell the subject property free and clear of liens, claims and encumbrances. Notice was given to the matrix, including Countrywide. An Order was entered on June 9, 1993, granting the Trustee's Motion for Authority to Sell. The Order was mailed to the matrix on June 10, 1993.

3. The Notice of Sale of Real Property under 11 U.S.C. § 363, Free and Clear of All Liens and Encumbrances, filed July 29, 1993 provided that the "homestead" of the Debtors, described as follows, would be sold at auction:

NE/4 NE/4 SW/4, Section 3–T7N–R25E, LeFlore County, Oklahoma.

4. The real property was sold at public auction on August 24, 1993, pursuant to Notice of the Proposed Sale of Real Property pursuant to Rule 6004, Fed.R.Bankr.P. given on July 29, 1993. The Notice was sent to the matrix, including Countrywide. Countrywide's counsel notified the Court it had an appraisal done on the property which valued the property at $50,000. An appraisal was done by Daniel Simon, appraiser and auctioneer, prior to the auction, which reflected a property value of $48,500.

5. Jeanne and James Lynch purchased the property at auction on August 24, 1993. The sale has still not been closed. However, the Lynches have made substantial improvements to the property of about $8,000.

6. On October 27, 1993, the Trustee filed an Application for Order Nunc Pro Tunc to clear up the irregularities in the legal de-

scription of the property noticed for and sold at auction. The Trustee petitioned for an Order Nunc Pro Tunc Order to change the legal description to:

NE/4 NE/4 SW/4 SE/4, Section 3, Township 7 North, Range 25 East, LeFlore County, Oklahoma.

An Order Nunc Pro Tunc correcting the legal description was entered by the Court on October 28, 1993.

7. On October 29, 1993, Countrywide commenced a state court foreclosure proceeding against the Debtors. Countrywide commenced its foreclosure action on the following described real property:

NE/4 NE/4 SW/4 SW/4, Section 3, Township 7 North, Range 25 East, LeFlore County, Oklahoma.

8. Teresa Marianos, Countrywide's counsel in the foreclosure action, testified Countrywide obtained relief from the automatic stay to foreclose on the Debtors' homestead on July 12, 1993. The Order for Relief by this Court was granted on July 30, 1993. However, the Motion had another incorrect legal description of the property. Interestingly, both Countrywide and the Debtors have referenced the subject property with different incorrect legal descriptions. This scenario has set the stage for a procedural nightmare.

9. Countrywide alleges that its due process rights were violated because it did not receive *adequate* notice of the proposed sale of the property. Mr. Fletcher, a bankruptcy technician of Countrywide, testified that it received the following documents:

(1) Notice to Employ Professional Person;

(2) Order Granting the Sale;

(3) Notice for Creditors to File Proof of Claim;

(4) Order Allowing Employment of Professional Persons;

(5) Debtors' Discharge.

Mr. Fletcher testified that the mail Countrywide receives goes through several hands before it reaches its final destination. The mail is sorted and anything having to do with bankruptcy is forwarded to the Bankruptcy Department. Then the mail clerk separates the bankruptcy mail by states. He testified that all mail is logged into the computer and the correspondence is then filed in the "hard file." Further, the mail is given to the bankruptcy technician in charge of that state. Mr. Fletcher said Countrywide has approximately 3,000 active bankruptcy files, with about 100 of those files being in Oklahoma. In addition, he said that the Bankruptcy Department receives over 500 pieces of mail per day.

10. Countrywide alleges that the inadequate notice of proposed sale constituted a taking of its property without due process. The Trustee and the Lynches allege that Countrywide's due process rights were not violated.

11. Additionally, the Trustee requests the Court to assess the reasonable costs and expenses associated with the liquidation of property of the estate. The Trustee seeks to recover the following fees and expenses:

| | |
|---|---|
| Attorney fees | $3,447.00 |
| Attorney expenses | $ 107.59 |
| Auctioneer's commission | $2,820.00 |
| Debts of sale | $ 940.00 |
| Trustee expenses | $ 80.90 |
| | $7,395.49 |

Countrywide has filed an Objection to these costs.

### CONCLUSIONS OF LAW

A. The Supreme Court in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314–15, 70 S.Ct. 652, 657–58, 94 L.Ed. 865 (1950) stated:

[N]otice [must be] reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections (citations omitted). The notice must be of such nature as reasonably to convey the required information, *Grannis v. Ordean, supra* [234 U.S. 385, 34 S.Ct. 779, 58 L.Ed. 1363 (1914)], and it must afford a reasonable time for those interested to make their appearance, *Roller v. Holly, supra* [176 U.S. 398, 20 S.Ct. 410, 44 L.Ed. 520 (1900)], *and cf. Goodrich v. Ferris,* 214 U.S. 71, 29 S.Ct. 580, 53 L.Ed. 914 [1909]. But if with due regard for the practicalities and peculiari-

ties of the case these conditions are reasonably met the constitutional requirements are satisfied.... The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected (citations omitted) or, where conditions do not reasonably permit such notice, that the form chosen is not substantially less likely to bring home notice than other of the feasible and customary substitutes.

■ B. A fundamental right guaranteed by the Constitution is the opportunity to be heard when a property interest is at stake. *Reliable Elec. Co. v. Olson Constr. Co.,* 726 F.2d 620, 623 (10th Cir.1984). Specifically, the reorganization process is dependent on all creditors and interested parties being properly notified of all vital steps in the proceedings so that they may have the opportunity to protect their interest. *Id.* In *Reliable,* Olson filed a counterclaim against Reliable and therefore, Reliable was placed on notice of Olson's status as a potential creditor. *Id.* at 622. However, no notice was sent to Olson regarding the reorganization proceedings. *Id.* The Court held that the notice given to Olson prior to the filing of the counterclaim was inadequate notice of the confirmation hearing.

■ C. Countrywide alleges it has been deprived of property without due process of law and that it is entitled to relief under Rule 9024, Fed.R.Bankr.P., incorporating Rule 60(b)(2) and (4), Fed.R.Civ.P. The Supreme Court, in *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), held "an elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated under all circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Countrywide cites *Mason v. Ashback,* 383 F.2d 779 (10th Cir.1967) for the proposition that a sale will not be set aside on the grounds of inadequacy of sales price alone,

unless the inadequacy is so great as to shock the conscience of the court or the sale indicates an apparent unfairness or impropriety. However, in *Mason,* the creditors received absolutely no notice of the proposed sale. Thus, *Mason* is distinguishable from the instant case.

Additionally, Countrywide cites ·*In re American Freight System, Inc.,* 126 B.R. 800 (D.Kan.1991), wherein the Court concluded that inadequacy of price was not sufficient to set aside the sale; however, the inadequacy of price coupled with insufficient notice sent to creditors can combine to create justification to set aside the sale. However, in *American Freight,* the land was only sold for approximately 55% of its actual face value. Countrywide presented no evidence that the property was not sold at its fair market value or that it could have received more had it sold the property after it foreclosed upon the property in state court. Moreover, Countrywide's appraisal reflected a value of $50,000 for the property and the Trustee's appraisal valued the property at $48,500. The property sold for $47,000 to the Lynches.

■ Due process is satisfied when the notice is reasonably calculated to reach its audience and inform it of the nature of the upcoming proceeding. *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950); *In re Moseley,* 74 B.R. 791 (Bankr.C.D.Cal. 1987). A notice, although the parties stipulated to a typing and scrivener's proofreading error, was held sufficient where the notice correctly referred to the buyers by name, the common property description, the loan number, as well as the balance due. *In re Layton,* 138 B.R. 219 (Bankr.N.D.Ill.1992). The Court in *First Nat'l Bank in Creston v. Francis,* 342 N.W.2d 468 (Iowa 1984) in determining whether the description in a financing statement was adequate, noted:

Nothing ·in the bank's description would have caused [a] person checking the record to suspect the section number was wrong or that the bank intended to encumber crops on other land ... When as here, nothing in the instrument itself indicates or directs that further inquiry should be made concerning the location of the se-

cured crops, [a] third person need not make further inquiry.

In this case, the notice was reasonably calculated to inform Countrywide that the property of the estate was being sold. Further, Countrywide knew that it held the mortgage on the Debtors' homestead. The Trustee admits that the improper legal description from the Debtors' schedules was carried all the way forward to the Motion to Sell. Had Countrywide made any inquiry regarding the schedules, it would have realized that there was an improper legal description on the homestead. With a little effort, Countrywide would have found that it had the mortgage on the property described in the Motion to Sell.

The Order allowing the sale describes the property as: "NE/4 NE/4 SW/4 of Section 3–7N–25E, LeFlore County (previous homestead)." Countrywide had a mortgage on the Debtors' homestead. Therefore, Countrywide had sufficient notice that property from the estate in the name of Glen and Stella Lowe on which it held a mortgage was being sold. Thus, the Court finds that Countrywide's due process rights have not been violated.

D. Countrywide argues that the Order Nunc Pro Tunc did not correct the legal description and as a result, moves pursuant to Rule 60(b)(2) and (4) to have the Order set aside. Rule 60(b)(2) requires a finding by the court that the Trustee misrepresented or committed fraud against Countrywide in obtaining the Order Authorizing Sale. No evidence has been presented that there was any fraud or misrepresentation. There was merely an error in the legal description of the property being sold. Rule 60(b)(4) allows an order to be set aside when it is void. However, merely because the order reflects an improper legal description, the judgment is not void. *United States v. Holtzman*, 762 F.2d 720 (9th Cir.1984). A judgment is not void merely because it was erroneous. *Id.* at 724 (citing 11 C. Wright and A. Miller, Federal Practice and Procedure, § 2862 at 198 (1973)). Here, the Trustee did not misrepresent any fact or commit fraud in obtaining permission to sell the subject property or in obtaining the Order Nunc Pro Tunc. The Court may enter a Nunc Pro Tunc Order to make its records speak the truth. Thus, the Trustee properly obtained the Order Nunc Pro Tunc reciting the correct legal description of the property sold. There is a general policy in bankruptcy to uphold sales conducted by the Trustee. *In re Todem Homes*, 51 B.R. 883 (Bankr. S.D.N.Y.1985).

 E. The Trustee seeks to recover his attorney fees and costs incurred with the sale of property of the estate in the amount of $7,395.49. However, interoffice conferences are noncompensable. *In re Peoples Savings & Investments, Inc.*, 103 B.R. 264, 272 (Bankr.E.D.Okla.1989). Additionally, travel time will be recoverable at one-half of the attorney's billing rate. Thus, the attorney fees for the attorney for the Trustee will be reduced by $247.50.

For the foregoing reasons, Countrywide's Motion to Vacate and Motion to Annul are **denied.** The Trustee's Motion to Assess Fees and Costs is **granted** for fees and costs in the amount of **$7,147.99,** and the Objection by Countrywide is **denied.**

IT IS SO ORDERED.