**In re Ronald Steven BRADDY, Debtor.**

**Bankruptcy No. 95–45987–R.**

United States Bankruptcy Court,
E.D. Michigan,
Southern Division.

May 9, 1996.

Thomas Budzynski, Clinton Township, Michigan, for Debtor.

David W. Ruskin, Trustee, Southfield, Michigan.

8.  11 U.S.C.A. § 101(5) (West 1993).

*ORDER GRANTING APPLICATION FOR ALLOWANCE OF ATTORNEY FEES*

STEVEN W. RHODES, Chief Judge.

In this case, the issue is whether debtor's counsel should be allowed his full hourly rate for travel time. The Court concludes that the full hourly rate should be allowed.

I.

The debtor's attorney has filed an application for allowance of attorney fees in the amount of $4,095, for 23.4 hours of work at $175 per hour. In addition, counsel seeks costs of $405.06.

The only objection was filed by the Chapter 13 Standing Trustee. The primary focus of the trustee's objection is upon the applicant's request for fees for travel time. The applicant travelled from his office in Clinton Township, Michigan, to downtown Detroit on three occasions in connection with this case. On July 17, 1995, the applicant spent three hours of time for the meeting of creditors, including travel time. On August 31, 1995, the applicant expended 2.5 hours for the confirmation hearing, including travel time. On September 14, 1995, the applicant spent 4 hours for the adjourned confirmation hearing including travel time. The application does not separately identify the travel time on these occasions, but given the distance it was probably about 45 minutes to one hour each way depending on traffic.

The trustee asserts that under 11 U.S.C. § 330, as interpreted in prior cases, the applicant should be permitted 50% of his standard hourly rate for travel time. The basis of this conclusion is that while travelling, the applicant is not productively providing "legal services." *See e.g., In re Hamilton Hardware Co., Inc.,* 11 B.R. 326, 331 (Bankr. E.D.Mich.1981). However, at the same time the applicant is obviously not available to provide billable legal services for other clients. It thus appears that allowing an attorney 50% of his normal hourly rate for travel is a kind of compromise in an effort to determine a "reasonable fee," as required by the Bankruptcy Code. *See e.g., In re Automobile Warranty Corp.,* 138 B.R. 72, 78 (Bankr.D.Colo.1991) (surveying the cases); *In re Spanjer Bros., Inc.,* 191 B.R. 738, 755 (Bankr.N.D.Ill.1996); *In re Lowe,* 169 B.R. 436, 440 (Bankr.E.D.Okla.1994); *In re Bob's Supermarket's, Inc.,* 146 B.R. 20, 23 (Bankr. D.Mont.1992), *aff'd in part, rev'd in part,* 165 B.R. 339 (9th Cir. BAP 1993).

The applicant asserts that he is entitled to his full hourly rate for his travel time on the grounds that the time spent travelling is a reasonable and necessary component to the legal services provided. *See e.g., In re Amdura Corp.,* 139 B.R. 963, 982–83 (Bankr. D.Colo.1992); *In re Cano,* 122 B.R. 812, 814 (Bankr.N.D.Ga.1991); *In re Bank of New England Corp.,* 134 B.R. 450, 455 (Bankr. E.D.Mass.1991), *aff'd,* 142 B.R. 584 (D.Mass. 1992); *In re The Landing, Inc.,* 122 B.R. 701, 703–05 (Bankr.N.D.Ohio 1990); *In re Carter,* 101 B.R. 170, 171–74 (Bankr.D.S.D.1989). He specifically notes that his attendance at the meeting of creditors and at the confirmation hearings was required. He further notes that if his travel time is not awarded in full, he will be placed at a competitive disadvantage in the marketplace of chapter 13 legal services, compared to attorneys whose offices do not require any significant travel time. He adds that locating his office in Clinton Township, although some distance from the Court, results in a substantial convenience to the clients in the geographic area that he serves, and facilitates access to the bankruptcy court, whose jurisdiction covers a wide geographical area.

II.

11 U.S.C. § 330(a) provides in pertinent part:

(a)(1) After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, an examiner, a professional person employed under section 327 or 1103—

(A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, or attorney and by an paraprofessional person employed by any such person; and

(B) reimbursement for actual, necessary expenses.

. . . .

(3) In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

(E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

(4)(A) Except as provided in subparagraph (B), the court shall not allow compensation for—

(i) unnecessary duplication of services; or

(ii) services that were not—

(I) reasonably likely to benefit the debtor's estate; or

(II) necessary to the administration of the case.

(B) In a chapter 12 or chapter 13 case in which the debtor is an individual, the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section.

■ Under 11 U.S.C. § 330, the focus of the Court's inquiry is on determining a reasonable compensation for actual, necessary services. *See* §§ 330(a)(1)(A) and 330(a)(4)(B). In this case, it is undisputed

that the applicant actually spent the time he claims to have spent on travel. *See* § 330(a)(3)(A). It is also undisputed that the applicant's travel and attendance was both necessary to the administration of the case and beneficial toward completion of the case. *See* § 330(a)(3)(C). It is further undisputed that the services, including the travel, were performed in a reasonable amount of time. *See* § 330(a)(3)(D). Finally, although there is no evidence of record in this case on this point, in the Court's experience, it is customary in the legal services market in this area for attorneys in non-bankruptcy cases to charge the full hourly rate for travel time. *See* § 330(a)(3)(E). *See also In re Cano*, 122 B.R. at 814.

■ In addition, in determining reasonable compensation, the Court concludes that it should also consider which result would best facilitate competition in the market for legal services in bankruptcy, and especially in chapter 13 cases. It is clear that granting full compensation for travel time will allow the greatest number of attorneys to offer their services to the public in chapter 13 cases. This benefits the public in its access not only to attorneys but also to the Court itself. In addition, to the extent a debtor decides that it is unreasonable to pay an attorney for travel time, that debtor is free to retain an attorney who agrees not to charge for travel time or whose office is close in proximity to the Court. Moreover, allowing the public the greatest access to attorneys throughout the district will likely reduce the compensation for travel time in particular cases, for two reasons. First, the increased competition should result in lower fees generally. Second, each attorney will be required to pro-rate such travel time when travelling for more than one case. *See In re Navis Realty, Inc.*, 126 B.R. 137, 144–45 (Bankr.E.D.N.Y.1991); *In re Carter*, 101 B.R. at 173.

■ Based on these considerations, the Court concludes that under 11 U.S.C. § 330, the compensation to which an attorney in this district [1] is entitled includes compensa-

---

**1.** The Court must note that this is not a case where the debtor has retained an attorney from

outside the district to handle a case that could be capably handled by an attorney in the district,

tion at the attorney's full hourly rate for travel time that is: (1) actually spent for travel; (2) a reasonable time considering the distance travelled; (3) necessary in the sense that the travel was required in connection with the bankruptcy court process; and (4) beneficial in the sense that the legal services for which the travel was undertaken advanced the administration of the estate. Because the record in this case establishes that the applicant's travel time meets these tests, full compensation for the travel time will be allowed.

Finally, the Court must note that the trustee's argument concerning the lack of productivity while travelling proves too much. Every week the Court witnesses a massive lack of productivity by the numerous chapter 13 attorneys attending the chapter 13 calendar call. Such calendar calls can take up to four to six hours, but the case load is such that an individual attorney may spend just a few minutes productively providing legal services in addressing the Court or negotiating with other attorneys. Yet there is no suggestion that the debtors' attorneys are not entitled to compensation at the full hourly rate for time waiting in court. Indeed, it would severely curtail the supply and availability of competent chapter 13 legal services if full compensation were awarded only for the time spent actually arguing or negotiating the case, and not for non-productive waiting time. *See* Stanley B. Bernstein, *Collier Bankruptcy Compensation Guide* ¶ 4.06, at 4–40–40.1 (Lawrence P. King ed., 1995).

### III.

The conclusion reached in Part II above, and the Court's consideration of "local practice" in resolving this issue, is consistent with *Perotti v. Seiter*, 935 F.2d 761 (6th Cir.1991). In that case, the Court considered an award of attorney fees under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988(b). On the issue of compensation for travel time, the Court stated:

Defendant argues that the district court improperly compensated plaintiff's counsel for time spent in travel. Defendant relies upon *Hickman v. Valley Local School District Board of Education*, 513 F.Supp. 659, 663 (S.D.Ohio 1981), for the proposition that travel time should not be billed at the usual rate. Plaintiff points to *Crumbaker v. Merit Systems Protection Board*, 781 F.2d 191 (Fed.Cir.1986), *modified on other grounds*, 827 F.2d 761 (Fed.Cir.1987), for the contrary position. We believe that matters of this sort are within the discretion given the district court, which has greater familiarity with local practice than does this court, and we will not reverse on this record.

*Perotti v. Seiter*, 935 F.2d at 764.

Although *Perotti* is a civil rights case, it appropriately applies in bankruptcy cases for two reasons. First, both the statute applied in that case, 42 U.S.C. § 1988(b), and the applicable provision of the Bankruptcy Code, 11 U.S.C. § 330(a), permit the court to allow "reasonable" attorney fees. Second, in applying 11 U.S.C. § 330(a), the Sixth Circuit has held that it is appropriate to look to cases applying other fee shifting statutes. *See In re Boddy*, 950 F.2d 334, 337 (6th Cir.1991) ("Congress intended no distinction between attorney's fees in bankruptcy cases and those awarded in non-bankruptcy cases . . .").

The Court's consideration of local practice in resolving this issue is also consistent with *Missouri v. Jenkins*, 491 U.S. 274, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989). In that civil rights case, the court upheld the award of fees for the services of paralegals and law clerks based upon the prevailing practices in the local market. The Supreme Court adopted this general proposition:

A reasonable attorney's fee under § 1988 is one calculated on the basis of rates and practices prevailing in the relevant market, *i.e.*, "in line with those [rates] prevailing in

and where that attorney now seeks full compensation for the required extended travel or for a higher hourly rate. *See e.g., Hadix v. Johnson,* 65 F.3d 532 (6th Cir.1995); *In re Almacs, Inc.,* 178 B.R. 598, 606–07 (Bankr.D.R.I.1995). Nor does this case involve issues of compensation for re-

quired out of town travel by a locally based professional. *See e.g., In re F & M Distrib., Inc.,* No. 94–52115 (Bankr.E.D.Mich. Aug. 10, 1995) (accountants awarded 75% of hourly rate for out of town travel time). The issues raised in those circumstances need not be addressed here.

the community for similar services by lawyers of reasonably comparable skill, experience, and reputation," *Blum [v. Stenson],* 465 U.S. [886], at 896 n. 11, 104 S.Ct. [1541], at 1547 n. 11 [79 L.Ed.2d 891] [ (1984) ], and one that grants the successful civil rights plaintiff a "fully compensatory fee," *Hensley v. Eckerhart,* 461 U.S. 424, 435, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983), comparable to what "is traditional with attorneys compensated by a fee-paying client."

*Missouri v. Jenkins,* 491 U.S. at 286, 109 S.Ct. at 2470.

This Court's analysis of the market forces at issue in the present case in Part II above is similar to the Supreme Court's analysis of market forces at issue in *Jenkins:*

> All else being equal, the hourly fee charged by an attorney whose rates include paralegal work in her hourly fee, or who bills separately for the work of paralegals at cost, will be higher than the hourly fee charged by an attorney competing in the same market who bills separately for the work of paralegals at "market rates." In other words, the prevailing "market rate" for attorney time is not independent of the manner in which paralegal time is accounted for. Thus, if the prevailing practice is a given community were to bill paralegal time separately at market rates, fees awarded the attorney at market rates for attorney time would not be fully compensatory if the curt refused to compensate hours billed by paralegals or did so only at "cost." Similarly, the fee awarded would be too high if the court accepted

separate billing for paralegal hours in a market where that was not the custom.

*Id.* at 286–87, 109 S.Ct. at 2470–71. *See also In re Wolverine Knitting Mills, Inc.,* 107 B.R. 546 (Bankr.E.D.Mich.1989).

## IV.

### A.

The Court's consideration of the issue presented has been complicated by two unpublished[2] decisions of the United States Court of Appeals for the Sixth Circuit, *In re Hayes & Son Body Shop, Inc.,* 958 F.2d 371 (6th Cir.1992) and *Schroeder v. Woodhaven Sch. Dist.,* 870 F.2d 657 (6th Cir.1989). In *Hayes & Son Body Shop,* the court affirmed the bankruptcy court's decision to allow 50% of the usual hourly rate for travel time. In *Schroeder,* the court affirmed the district court's complete denial of fees for travel time.

■ Neither party cited *Hayes & Son Body Shop* or *Schroeder* and the Court found these unreported decisions through its own research. Nevertheless, the Court feels compelled to attempt to determine the appropriate weight to give them. This is an important issue because this Court is obligated to follow all published Sixth Circuit decisions, even those with which this Court disagrees, *see, e.g., In re Gaylor,* 123 B.R. 236, 241 (Bankr.E.D.Mich.1991), and if those unreported decisions are entitled to the same weight as published decisions, the Court might[3] have to sustain the trustee's objections in the present case.

---

2. The unpublished decisions of the Sixth Circuit are "unpublished" in the sense that they are not published in the bound volumes of West's Federal Reporter. The Sixth Circuit does however distribute all of its decisions for electronic publication. In Richard C. Reuben, *New Cites for Sore Eyes,* 80 A.B.A.J. (June 1994) at 22, the author states that in 1993, the Sixth Circuit published 2250 opinions electronically, of which 550 were reported in bound volumes. The author further states that the Second, Third, Fifth and Eleventh Circuits do not permit any publication of their unreported decisions. Presumably the issue raised here would not arise in those circuits. For a review of the rules of various circuits regarding the citation of published decisions, see Elizabeth M. Horton, *Selec-*

*tive Publication and the Authority of Precedent in the United States Courts of Appeals,* 42 UCLA L.Rev. 1691, 1696 at n. 19–22 (1991). Unlike the Sixth Circuit, a majority of circuits permit the citation of unreported decisions only in related cases. *Id.*

3. Even if these two decisions are binding, interesting issues would still arise from the arguable inconsistency between them, and from the arguable inconsistency of both with *Perotti v. Seiter,* discussed in Part III. As noted, *Hayes & Son Body Shop* allowed 50% of full compensation for travel time, *Schroeder* allowed no compensation, and *Perotti* allowed full compensation.

Unfortunately, the precedential value of unpublished decisions of the Sixth Circuit is unclear. This lack of clarity originates with Sixth Circuit Rule 24(c),[4] which provides:

**(c) Citation of Unpublished Decisions.** Citation of unpublished decisions by counsel in briefs and oral arguments in this court and in the district courts within this circuit is disfavored, except for the purpose of establishing res judicata, estoppel, or the law of the case.

If counsel believes, nevertheless, that an unpublished disposition has precedential value in relation to a material issue in a case and that there is no published opinion that would serve as well, such decision may be cited if counsel serves a copy thereof on all other parties in the case and on the court. Such service may be accomplished by including a copy of the decision in an addendum to the brief.

Citing this rule, the Sixth Circuit has stated in several published decisions that its unpublished decisions have little or no precedential value. *See Manufacturers' Indus. Relations Ass'n v. East Akron Casting Co.,* 58 F.3d 204, 208 (6th Cir.1995); *United States v. Williams,* 15 F.3d 1356, 1363 n. 6 (6th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 431, 130 L.Ed.2d 344 (1994); *Silverburg v. Evitts,* 993 F.2d 124, 127 (6th Cir.1993); *Taxpayers United for Assessment Cuts v. Austin,* 994 F.2d 291, 295 n. 3 (6th Cir.1993); *Brown v. Crowe,* 963 F.2d 895, 897 n. 2 (6th Cir.1992); *Hall v. Shipley,* 932 F.2d 1147, 1152 (6th Cir.1991); *Ewing v. McMackin,* 799 F.2d 1143, 1151 n. 14 (6th Cir.1986); *Kolesar v. Youghiogheny & Ohio Coal Co.,* 760 F.2d 728, 731 n. 1 (6th Cir.1985); and *Ramey v. Kentland Elkhorn Coal Corp.,* 755 F.2d 485, 488 n. 6 (6th Cir.1985).

On the other hand, the Sixth Circuit has cited its unpublished decisions in numerous published decisions. Sometimes, the court explicitly states that its citation of an unpublished decision is under the exception in Rule 24(c) that applies to unpublished decisions that have "precedential value in relation to a material issue in the case and there is no published decision that would serve as well. . . ." *See Pension Benefit Guar. Corp.*

*v. Alloytek, Inc.,* 924 F.2d 620, 625 n. 3 (6th Cir.1991); *Youghiogheny & Ohio Coal Co. v. Milliken,* 866 F.2d 195, 201 n. 2 (6th Cir. 1989); *Norton v. Parke,* 892 F.2d 476, 479 n. 7 (6th Cir.1989), *cert. denied,* 494 U.S. 1060, 110 S.Ct. 1533, 108 L.Ed.2d 772 (1990); *Oviedo v. Jago,* 809 F.2d 326, 329 n. 3 (6th Cir.1987); and *Baer v. R & F Coal Co.,* 782 F.2d 600, 602 n. 1 (6th Cir.1986). More often, however, the Sixth Circuit simply cites its unpublished decisions without explicitly stating that the exception in Rule 24(c) applies. Within the past 12 months, such published decisions include: *United States v. Turner,* 77 F.3d 887, 889 (6th Cir.1996); *Brown v. Local 58, Int'l Bhd. of Elec. Workers, AFL–CIO,* 76 F.3d 762, 770–71 (6th Cir. 1996); *DuPont v. United States,* 76 F.3d 108, 110 (6th Cir.1996); *Schaffer v. A.O. Smith Harvestore Prod., Inc.,* 74 F.3d 722, 732 (6th Cir.1996); *United States v. Smith,* 73 F.3d 1414, 1416–17 (6th Cir.1996); *Tully Constr. Co., Inc. v. Cannonsburg Envtl. Assocs., Ltd. (In re Cannonsburg Envtl. Assocs., Ltd.),* 72 F.3d 1260, 1265 (6th Cir.1996); *United States v. Mitchell,* 67 F.3d 1248, 1254 (6th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 971, 133 L.Ed.2d 891 (1996); *United States v. Sherlin,* 67 F.3d 1208, 1218 n. 3 (6th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 795, 133 L.Ed. 744 (1996); *United States v. Travis,* 62 F.3d 170, 173 (6th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 738, 133 L.Ed.2d 688 (1996); *Whisman v. Robbins,* 55 F.3d 1140, 1146 (6th Cir.1995); and *United States v. Owens,* 54 F.3d 271, 277 (6th Cir.), *cert. dismissed,* —— U.S. ——, 116 S.Ct. 492, 133 L.Ed.2d 418 (1995).

A review of the Sixth Circuit cases in each of these categories suggests that although the Court of Appeals does recognize that its unpublished decisions are not binding precedent in the same sense as published decisions, the court does cite an unpublished decision when there is no published decision on point and the reasoning of the unpublished decision is found persuasive.

The practice in the lower courts is consistent with the approach taken in the Sixth Circuit. Several lower court decisions have

---

**4.** *See also* the identical Sixth Circuit Rule 10(f).

addressed the issue of the precedential weight of unpublished Sixth Circuit decisions. *See City of Detroit v. City of Highland Park,* 878 F.Supp. 87, 90 n. 3 (E.D.Mich.1995); *In re Prager,* 181 B.R. 917, 921 (Bankr. W.D.Tenn.1995); *Muhammad v. City of New York Dept. of Corrections,* 904 F.Supp. 161, 190 n. 38 (S.D.N.Y.1995); *Spells v. Cuyahoga Community College,* 889 F.Supp. 1023, 1027 n. 2 (N.D.Ohio 1994); *Chance v. Compton,* 873 F.Supp. 82, 86 n. 1 (W.D.Tenn.1994); *Harrington v. Grayson,* 764 F.Supp. 464, 468 n. 6 (E.D.Mich.1991); and *Curtis v. Universal Match Corp., Inc.,* 778 F.Supp. 1421, 1428 n. 1 (E.D.Tenn.1991). In each of these cases, the lower courts noted that unpublished Sixth Circuit decisions are not binding precedent, and then went on to examine whether the particular unpublished Sixth Circuit decision cited to it persuasively addressed the legal issues.

For example, in *In re Prager,* cited above, the issue was whether a support obligation for a child who had reached the age of majority was non-dischargeable under 11 U.S.C. § 523(a)(5). Under the analysis required by the published Sixth Circuit decision in *Fitzgerald v. Fitzgerald (In re Fitzgerald),* 9 F.3d 517 (6th Cir.1993), Bankruptcy Judge Kennedy concluded that the support debt was non-dischargeable. In addressing an unpublished Sixth Circuit decision cited by the debtor, *Sholes v. Sholes (In re Sholes),* 985 F.2d 561 (6th Cir.1993), Judge Kennedy noted that a majority of Sixth Circuit and district court decisions have held that unpublished Sixth Circuit decisions are not binding. However, Judge Kennedy noted that in two published decisions, *Norton v. Parke* and *Chance v. Compton,* cited above, the courts did rely on unpublished decisions that the courts found persuasive. Nevertheless, in determining that *Sholes* was not persuasive, Judge Kennedy noted that *Fitzgerald* was decided after *Sholes,* and that the one page *Sholes* opinion provided little analysis of its facts or legal issues.

Thus, the lower courts join the Sixth Circuit in applying a general principle that although not binding, unreported Sixth Circuit decisions can be cited if persuasive.

**B.**

In applying that general principle to this case, this Court concludes that to the extent that *Hayes & Son Body Shop* held that travel time should be awarded at 50%, and to the extent that *Schroeder* held that no compensation can be awarded for travel time, the lack of reasoned analysis in those decisions leaves this Court unpersuaded.

In *Hayes & Son Body Shop,* the Sixth Circuit's entire analysis of the issue is found in these two sentences:

Similarly, local travel time is an overhead expense built into a lawyer's hourly rate, except for situations in which the lawyer actually performs legal services during the travel time, or in which the travel time exceeds one hour, in which case billing at one half the attorney's hourly rate is permissible. *In re S.T.N. Enters.,* 70 B.R. 823, 837 (Bankr.D.Vt.1987). Finally, we reject plaintiff's contention that disallowance of travel expenses constitutes an antitrust violation.

*Hayes & Son Body Shop,* 958 F.2d at 371.

Similarly, in *Schroeder,* the Sixth Circuit's only explanation for affirming the district court's complete denial of fees for travel time was this simple statement: "[D]etermining the amount of fees to award for travel time is within the district court's discretion." *Schroeder,* 870 F.2d at 657.

Clearly there is no reasoned analysis in either of those decisions. Neither decision cited or discussed the numerous published decisions on the issue of compensation for travel time, nor discussed any basis for its choice of approaches from among the several different approaches taken in the case law. Likewise, neither decision discussed the factual circumstances of the request for fees for travel time. The first sentence of the quote in *Hayes & Son Body Shop* simply restates the conclusion reached in the case cited, *S.T.N. Enters.* This suggests that the stated rule is settled law, but as noted in Part I, the law on this issue is anything but settled.

There is another reason why this Court is left unpersuaded by *Hayes & Son Body Shop* and *Schroeder.* As those opinions state, the standard of review for fee issues on appeal is

abuse of discretion. *Hayes & Son Body Shop* at 371; *Schroeder* at 657. *See also In re Boddy*, 950 F.2d at 336. Thus, the Sixth Circuit's statements regarding fees for travel time in those two unpublished decisions may not have been intended to be statements of settled law strictly applicable in all cases. The cases may instead stand for the more basic proposition that the lower court's decision regarding compensation for travel time will be reversed only for an abuse of discretion. Indeed, only that interpretation of those cases can be reconciled with the published decision in *Perotti*, which affirmed full compensation for travel time, as discussed in Part III, above. *See* n. 3, above.

Therefore, the Court concludes that the results in the unpublished decisions in *Hayes & Son Body Shop* and *Schroeder* are not binding and do not preclude this Court from exercising its own discretion to reach the conclusion stated in Part II, above.

## V.

Accordingly, IT IS HEREBY ORDERED that the trustee's objections to the application for fees filed by debtor's attorney are overruled, and the debtor's attorney is awarded $4,095 in fees and $405.06 in expenses.